OGUNQUIT VILLAGE CORPORATION *vs.* INHABITANTS OF WELLS.

York.     Opinion November 6, 1923.

*Interpretation of Chapter 203 of the Special Laws of 1913, establishing the Ogunquit Village Corporation.*

To require the town to pay money which it had before the Village Corporation was established, raised and also legally expended would involve an issue of notes or bonds, or a special assessment and no such procedure is authorized or contemplated by the Act.

The phrase "Actual net cost" of common schools used in the Act means gross cost less amount received from the State in respect to scholars and estates in the village and less proportionate part of income on town school fund if any.

The dates of payments by the town to the village are plainly stated in the Act. The time of payment by the district in respect to schools is left to inference. We determine that the payment by the district to the town is to be made on December 15th in each year and not earlier either by set-off or otherwise.

On report. A bill in equity seeking an interpretation of Chapter 203 of the Special Laws of 1913, incorporating Ogunquit Village Corporation. By agreement of the parties the cause was reported to the Law Court for final determination upon bill, answer, agreed statement of facts and the charter of the plaintiff corporation. Bill sustained.

The case is stated in the opinion.

*Ray P. Hanscom and E. P. Spinney,* for plaintiff.

*Woodman & Whitehouse and Matthews & Stevens,* for defendants.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, MORRILL, WILSON, DEASY, JJ.

DEASY, J. Chapter 203 of the Private and Special Laws of 1913 establishes within the town of Wells, in York County, the Ogunquit Village Corporation. The Act became effective July 1, 1913, subject to acceptance by the town. On October 9, 1913, it was accepted and became fully effective.

Differences of opinion having arisen as to the construction of certain sections of the Act, this bill is presented. The avoidance of a multiplicity of suits is relied upon as giving this court jurisdiction.

In ·the following opinion the town of Wells is referred to as "the town" and the Ogunquit Village Corporation as "the village."

Certain of the town's functions, so far as concerns the territory of the village, are by the Act in effect, transferred from the town to the village, including those relating to fire protection, roads, sewers and other sanitary works, parks, tree planting, public wharves and landings, police, water supply and public lighting. ·

No taxes are authorized to be assessed by or specifically in behalf of the village. But sixty per cent. of all town taxes (not including state and county taxes) collected from inhabitants and estates in the village is required to be paid to it by the town.

The portions of the Act which are in controversy are the following:—

·SEC. 3. (in part). "With reference to the common schools which are within the territory of said corporation there shall be paid to the town of Wells by this corporation whatever amount is the actual net cost to said town of Wells for maintaining said common schools and schoolhouses, located within the limits of said corporation, reference being had to the amount raised therefor by taxation and the amount which said town of Wells receives from the State of Maine for the maintenance of common schools. Said village corporation shall annually pay to the town of Wells the sum of seven hundred dollars to be used by said town in maintenance of its high school."

SEC. 5. "The town of Wells shall pay over to the treasurer of said corporation out of the taxes collected from the inhabitants and the estates within the territory of the Ogunquit Village Corporation aforesaid, a sum equal to sixty per centum of all the town taxes, exclusive of the state and county tax, collected from said inhabitants and estates.· Said sixty per centum shall be payable to said treasurer as follows, viz.: one-quarter of said amount on or before May fifteen of each year, one-quarter of said amount on or before July fifteen of each year, and· the balance on or before December fifteen of each year. The amount of such sixty per centum in any year shall be· determined by computing said sixty per centum upon the amount of money raised by taxation and appropriation upon the property within said Ogunquit Village Corporation the year previous." · ·

SEC. 13 (in part). "Whatever sum or sums of money may be appropriated by said town to be used and expended within the limits of said corporation, during the year in which this charter is accepted, shall be deducted from the amount payable to said corporation for said year as provided in section five of this act."

The parties are at issue as to whether payments of the "sum equal to sixty per centum" (Section 5) begin in 1913. It is urged that if so the percentage would be based upon the amount raised by taxation in 1912, "the year previous," and thus before the incorporation of the village. This point, however, is by no means fatal. The intent of the Legislature will be given effect notwithstanding this objection. When Section 5 is read alone its meaning is perhaps obscure, but when Section 13 is read with it, the intent is plain. The percentage is to be paid in 1913. Otherwise Section 13 would be meaningless.

But the town cannot pay "out of the taxes collected" from the 1912 and 1913 assessment, money which it had expended before the village corporation came into being. To require this would be to try to make the mill "grind with the water that has passed." The town might have been, but was not specifically authorized to issue notes or bonds or to impose a special assessment, to compensate the village in respect to the part of the 1912 and 1913 tax which had been expended before October 9, 1913. In the absence of express provision it cannot be assumed that such measures were intended to be authorized. The sums to be paid in 1913 and 1914 were not six tenths of the assessment of 1912 and 1913 respectively, nor of the collection from such assessments, but in each case six tenths of the unexpended balance on October 9, 1913, the birthday of the village corporation.

Another contention is as to the meaning of the phrase "actual net cost" (Section 3). This of course means gross cost subject to some deduction. The deduction intended is undoubtedly the amount received from the State in respect to the scholars and estates in the village, and also the sum received as income on town school fund, if any, apportioned in same way.

It is argued that this involves a diversion of the school money contrary to the provisions of R. S., Chap. 16, Sec. 163. Not so. There is no necessary diversion of school funds and if there were, the Legislature which enacted the statute has power to abrogate it, or create exceptions to it.

The third disagreement relates to the time when payments are to be made to and by the village. The times when payments are due to the village are definitely fixed by the Act as May 15, July 15 and December 15 in each year.

On each of those dates there is due and payable by the town to the village a certain part of all town taxes assessed upon inhabitants and estates in the village for the previous municipal year, which, at that time, have been collected, less of course· sums previously paid on same account. The part due and payable on May 15 is one quarter of six tenths or ·fifteen per cent. On July 15 the same percentage is payable, but including collections up to that date. On December 15 the balance is due and payable taking into account all collections to that time. Payments in 1913 and 1914 rest upon a different basis as above stated.

It is obvious that for months prior to December 15th the town will have in its treasury a considerable part of the fund which will eventually belong to the village corporation.. We think it reasonable and in harmony with the probable intent of the Legislature that the village be permitted and required to make its payments on December 15th in each year and in no part before, either by set-off or otherwise.

On December 15th it should pay to the town the net cost of the common schools in the village for one year ending on that day (unless the parties agree upon a more convenient day)—and in respect to the high school the flat sum of seven hundred dollars.

The payment required to be made in 1913, however, should include only the part of the net cost of village schools accruing after October 9th. The seven hundred dollars to be paid on account of high school is to be apportioned in same way.

No express provision is made for the division of taxes collected after December 15 of the year following the assessment. However, to carry into effect the manifest purpose of the law, six tenths of such collections must be accounted for on the next succeeding settlement day.

Unless the parties agree, the case must be referred to a master to determine the amount due up to the date of the bill, August 23, 1916, according to the above principles.

*Bill sustained.*