ORREN G. JONES *v.* INHABITANTS OF SANFORD.

York, 1874.—January 30, 1877.

*Town.*

Under the statutory provision that the notice for a town meeting shall be posted seven days, unless the town appoints by vote in legal meeting a different mode, the defendant town voted that its meetings (with certain exceptions named) should be notified by posting a notice therefor not less than three months. *Held,* that a town by-law or ordinance requiring so long a notification is unreasonable and on that account unauthorized and void.

A town does not exceed its powers by making a contract to allow a dramatic company the use of its town house for the period of six years, when not wanted for town purposes, in consideration of money to be expended by such company for enlarging the building and putting upon it necessary repairs.

On REPORT.

ASSUMPSIT, for $2000 for labor done and materials furnished, in the fall of 1872, under a contract signed by a committee of the defendant town, in the improvement and repairs of their town house. A part of the improvements was the adding of an upper story for a hall for the use in part of a dramatic company in consideration of certain aid in the repairs. No question was made but the plaintiff performed his part of the contract and the dramatic company rendered such aid as they agreed.

The defense was that the seven days notice, under which the town meeting was called which acted in the matter, was not sufficient and, therefore, that the committee appointed at the meeting were not authorized to contract; and further, that the town had no power to make such an arrangement with the dramatic company.

Copies of certain town records were put in, the preliminary parts of which are omitted as no point was made of any irregularity other than as before stated.

A record of a town meeting of the defendants, August 3, 1872, shows : "Voted that the Sanford Dramatic Company and others be permitted to make an addition of thirty feet in length to the town house, provided that they furnish the frame and raise it, and board and clapboard and shingle it at their own expense, and also that they be permitted to make such alterations, put in such par-

titions and furnish such additions as they may need, provided they do the same at their own expense."

Also, "voted that the town agree that the Sanford Dramatic Company shall have free use of the town house for their entertainments for six years on condition of their making such additions as above voted, reserving the right of the town to use said house at any time they may need it for town business and also the right to let it for all other purposes."

Also, "voted that the town, on conditions that the Sanford Dramatic Company and others put on the town house an addition of thirty feet and furnish as per foregoing votes, will at the same time and in connection with said alterations put on said house an additional story of suitable height for a hall and permit the said Sanford Dramatic Company to use the upper story for their entertainments, reserving for the town the right to let said hall, for their own benefit, to all other parties."

Also "voted to choose three persons as a committee on the part of the town, to superintend the alterations and additions to the town house, make a plan and specifications and to empower them to contract, in behalf of the town, with some person or persons to do the work or to let out by the job the improvements above voted, provided the Sanford Dramatic Company shall do the amount of work above voted. Chose I. S. Kimball, Hosea Willard and Moses W. Emery said committee."

On the point of insufficient notice, the defendants put in copy of record of a town meeting, held June 4, 1868, which stated the organization and vote, which was unanimous, not to take $20,000 of stock in the Portland & Rochester Railroad, and then voted:

"That all future meetings of the town, until otherwise legally directed by the town, be notified by posting a true and attested copy of the warrant in three public and conspicuous places in the town, one of which shall be the outside of one of the main outer doors of the town house in said town, at least three months before the day named for said meeting; provided, that this vote shall not apply to the annual March town meeting for the election of town officers, nor to the September town meeting, for the election of state and county officers, nor to the November town meeting

held to vote for presidential electors, but these last named meetings shall be notified as heretofore, and all other meetings shall be held as by this vote contemplated."

It was admitted "that meetings of the town had been called and held prior to June 4, 1868, upon the question of aid to the Portland & Rochester Railroad Company, said meetings having been holden on April 25, May 25, May 26, May 28, May 29, May 30, June 1, June 2, June 3, in the year 1868, such meetings having been held upon several warrants ; also that since that date all the meetings of the town, fifteen in number, have been holden upon warrants on which seven days' notice had been given, with the exception of a meeting holden June 21, 1873, upon three months' notice, such meetings having been for the purpose of raising money, acceptance of ways laid out, and the ordinary business of the town."

*J. Dane & E. E. Bourne,* for the plaintiff.

*A. Lowe,* for the defendants.

PETERS, J. On June 4th, 1868, the defendant town, at a legal meeting, voted that all future meetings of the town, with the exception of the annual spring and fall meetings, and the November meeting for the choice of presidential electors, should be notified by posting a notice therefor, for a period of time, not less than three months. Was this vote a valid one or not? If it was, then the meeting that authorized the contract in question to be made, having been called under the usual statutory (seven days') notice, was an illegal meeting, and the contract cannot be sustained. If it was not a valid vote, then the contract can be sustained, and the defendants are liable under it.

The defendants maintain their authority for passing the vote requiring three months' notice, under the provision of R. S., c. 3, § 7, which prescribes how and what notice shall be given for a meeting ; "unless the town has appointed by vote in legal meeting, a different mode, which any town may do."

The plaintiff's interpretation of the statute, is, that a town can regulate the means by which a notice shall be made known to the inhabitants, but that they cannot prescribe the length of time that

the notice shall be published; and the defendants claim the correct interpretation to be, that "the mode" of calling a meeting embraces both the manner and duration of the notice. We think it would be difficult to sustain this position of the plaintiff. It would seem hardly practicable to confer only a partial discretion upon the town in such a matter. We are inclined to think that the design was, to restore to the town the privileges in that respect that were anciently enjoyed. Formerly, such notices were regulated by some practice or usage, or vote of the town; and town meetings were notified in many different ways, without any uniformity as to the length of time that the notices for them were given. The present statute is copied from the revision of 1841. Prior to that time the statutory provision for notice was no more than this : "The manner of summoning the inhabitants to be such as the town shall agree upon." Laws of 1821, c. 114, § 5. There, "the manner of summoning" the inhabitants included both the kind of notice and the length of time it should be given. While the section under examination uses the word "mode," another section employs the word "manner" in the same connection. Section 21, c. 11, R. S., provides that a school district, "at a legal meeting, may determine the manner of notifying its future meetings." The following cases have a tendency to show, somewhat indirectly, that "the mode" of calling a meeting, (as now styled,) or "the manner" of calling it, (as sometimes styled,) embraced both the kind of the notice and the time it should be given. *Moor* v. *Newfield,* 4 Maine, 44. *Tuttle* v. *Cary,* 7 Maine, 426. *Ford* v. *Clough,* 8 Maine, 334. *State* v. *Williams,* 25 Maine, 561, 566. *Christ's Church* v. *Woodward,* 26 Maine, 172, 179. *Jordan* v. *School District No.* 3, 38 Maine, 164. *Kingsbury* v. *School District in Quincy,* 12 Met. 104.

But there is a ground upon which, in our opinion, the vote requiring a three months' notice, should be regarded as invalid; and that is its unreasonableness.

In the first place, it cannot be questioned that the legislature, by the statutory provision referred to, conferred on the town merely a right to pass an ordinance or by-law. Ordinance and by-law are practically equivalent terms. *Heland* v. *City of Lowell,* 3 Allen, 407. And see Dillon on Mun. Cor. vol. 1, § 245, and particularly his citations in notes to this section.

It is also well settled, that ordinances and by-laws of municipal corporations, to be valid, must be reasonable, and not oppressive in their character. Any unreasonable ordinance or by-law is void. Numerous authorities bear out this proposition. *Kennebec & P. Railroad* v. *Kendall*, 31 Maine, 470, 477. *Wadleigh* v. *Gilman*, 12 Maine, 403. A. & A. on Corpor. § 347. Bac. Abr. By-Law. Dillon, cited *supra*, § 253, and cases there cited. If this was not so, it is easy to be seen, that a town could require such a length of notice as would really prevent the holding of any meeting during the year, except the September meeting, the day for which is fixed by a constitutional provision.

Whether a by-law or local ordinance is reasonable or not, is a question of law for the court. This proposition is too well settled to be argued. *Commonwealth* v. *Worcester*, 3 Pick. 473. *Boston* v. *Shaw*, 1 Met. 130. *Commonwealth* v. *Stodder*, 2 Cush. 562. *Commonwealth* v. *Robertson*, 5 Cush. 438. Dillon on Mun. Cor., vol. 1, § 261.

This principle does not apply, where that is done by a municipal corporation which is directly authorized to be done by the legislature. But where the power granted is a general one, the ordinance passed in pursuance of it, must be a reasonable exercise of the power or it is invalid. It is an authority, however, to be cautiously applied by courts. Discretionary powers are not, except in exceptional cases to restrain gross abuses, subject to judicial control. Dillon on Mun. Cor., vol. 2, § 669.

By this criterion, we think the vote requiring three months' notice for an ordinary town meeting, was unreasonable ; that it was an abuse, rather than a fair use, of the power entrusted to the town. It was undoubtedly intended to prevent an expression of the public will upon certain public measures. It was so exorbitant a demand, it has never been at all observed in any way, until it was invoked as a defense to this suit. It appears that the town itself paid no regard to the vote in any of its subsequent (fifteen) meetings ; and many important proceedings of the town could be questioned, if the vote is upheld. Not a murmur was raised against the legality of the meeting when the contract now in suit was authorized to be made, although the question of the expedi-

ency of the contract was stoutly contested. The vote amounted to almost a denial, to a portion of the inhabitants, of the right of assembling to consider questions of public interest, should such questions arise. The action of the town might be demanded in various ways, upon questions of public concern, without a reasonable opportunity being afforded them to act, both in times of war and peace, if such a vote were to stand. Questions unforeseen at the annual meeting, requiring immediate consideration, might come up in relation to taxation, the schools, the poor, the public health, and the public defense, and in many other ways. A freshet might carry away a bridge, and the public travel be blocked for at least one-fourth of a whole year before the town might have an opportunity even to consider how it should be replaced. Town officers might refuse to accept, or die, or resign their places, and others could not be elected for three months. An act of the legislature might be submitted to the votes of the people, and this town have no chance to vote upon it, for want of time to give the required notice to the inhabitants. Many illustrations could be added, showing how unreasonably might the inhabitants, or a portion of them, be affected by the operation of such a vote.

In fact, the whole theory of a New England town meeting, has been, that upon all necessary occasions, the inhabitants upon short notice, could come together. Upon this idea is based the provision (R. S., c. 3, § 4,) that where the selectmen unreasonably refuse to call a town meeting, a justice of the peace may call one upon the application of any ten or more voters. But this privilege became practically nullified by this vote, as far as the voters of Sanford are concerned. The vote is incompatible with all the statutes requiring notice in other cases. The general law requires a notice of seven days ; plantations can organize in fourteen days ; all processes of court require a notice of but fourteen days, save such as are to be served on corporations, and on them require but thirty days' notice ; corporations can organize after seven days' notice ; parish and religious societies are called together upon seven days' notice ; proprietors of lands, wharves, and other real estate, in common, upon fourteen ; a foreclosure of mortgage requires three publications, which may be accomplished in about

fourteen days. Three months is all the time required to constitute a resident in this state a voter. There is no statutory notice of any kind, anywhere that we are aware of, analogous to a notice of a call for a town meeting, that requires a publication or service for a time exceeding thirty days at the outside. We venture to say, that there cannot be found any law of any state, ever prescribing the necessity of a three months' notice for an ordinary municipal meeting, or anything like it. By the English municipal corporations' act, three days' notice only is required of the time and place of a meeting, by posting the call on or near the town hall. 1 Dillon on Mun. Cor., § 203. Seven days' posting was adjudged to be a reasonable notice of a town meeting, in *Rand* v. *Wilder*, 11 Cush. 294.

Our conclusion is, that the vote in question, undertaking to establish a law of the town requiring such a notice, was unauthorized and void. This conclusion sweeps many of the other points from the case, making their consideration unnecessary.

The defendants contend that the town exceeded its powers in several respects pertaining to the claim of the plaintiff. First, that it was beyond the scope of its authority, to raise money to afford aid and encouragement to a "dramatic company." But no such design appears to have been entertained. The end to be attained was, to get an improved town hall, and the contract with the dramatic company was designed as a means by which it could be accomplished. This mode decreased the amount of money necessary to be raised.

Then it is said that the extensiveness of the town house, as rebuilt and added to, was beyond the reasonable wants and the ability of the town. "But," as said in *French* v. *Inhabitants of Quincy*, 3 Allen, 9, cited by the plaintiff, "within reasonable limits the town may exercise its own discretion on the subject." The wants of the future, as well as of the present, are to be considered. More use is made of the accommodations afforded by commodious public halls and town houses now than formerly. In large towns, the good of society, in its moral, social and educational aspects, may be much promoted by them. It would be difficult to fix a rule for towns upon the subject. Towns are not apt to be extra-

vagant or oppressive in the direction complained of. When they are, or threaten to be so, the prevention of it is much better attained by a resort to the restraining power of this court by injunction, wherever its intervention might be proper and legal, than to wait until persons other than tax payers have become interested in the validity of the action of the town. None of the points taken by the defendants can be sustained.

*Defendants defaulted.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.