INHABITANTS OF THE TOWN OF SKOWHEGAN, In Equity,

*vs.*

MARTIN B. HESELTON.

*(Two Cases)*

Somerset.    Opinion December 13, 1917.

*Ordinances.    Motive of framers of Ordinances or Statutes.    State or Municipal*
*officers.    Police power.    Rule as to inhabitants of city or town having con-*
*trol or direction of State officers.    When equitable proceedings may*
*lie.    Ordinances relating to the rebuilding or repairing of*
*buildings partly destroyed by fire.*

This proceeding is based upon two bills in equity by the *Inhabitants of the Town of Skowhegan* vs. *Martin B. Heselton* of that town, praying for an injunction to restrain him from erecting or extensively repairing a burned wooden building situated within the fire limits of the plaintiff town.    The first bill comes up on defendant's appeal from the decree of the court granting an injunction.    The second bill comes on report.    The two bills aim at precisely the same end the only difference being that the second bill was brought upon the ordinance amended since the fire.

The cases finally resolve themselves into an interpretation of the town ordinances.

The by-laws and ordinances under which these bills are brought have the following origin.    Chapter 247 of the Private and Special Laws of 1909 is entitled "An act to Provide for a Fire and Police Commission for the Town of Skowhegan. Section 1.    Upon the acceptance of the provisions of this act, as hereinafter provided, a board of fire commissioners is hereby created in and for the town of Skowhegan to consist of three persons who shall be appointed by the selectmen of said town."    The act has been accepted.    This section creates the office of commissioners.    It is created by the State and not the town.    Instead of being elective it is to be filled by appointment by the selectmen.    They are not municipal but public officers.    They hold a legislative office.    They are not the agents of the town.    They act upon their own responsibility and are not subject either to the control or direction of the inhabitants of the town.

When these commissioners are once appointed they then become legislative and not town officers. The act of 1909, Section 3, confers certain express powers and duties upon the commissioners, entirely independent of any action of the town. This section provides: "Said commissioners shall have power to adopt by-laws and ordinances, and perform all the duties imposed upon said town and municipal officers by chapter thirty of the Revised Statutes." This chapter covers prevention of fires; inspection of buildings; protection of life in public buildings and investigation of fires.

It therefore seems clear that the only inquiry herein involved is (1) the constitutionality and (2) reasonableness of chapter thirty of Revised Statutes. Of the constitutionality there can be no question. Take away the police power of the State and you at once put in jeopardy both life and property. It is the one inherent power of all government.

Whatever may be said regarding the original ordinance which gave no right of appeal, we think the amended ordinance giving the right of appeal is reasonable and therefore valid.

Now, coming to that part of the ordinance which provides "if such damage shall amount to more than one-half of such value thereof (the wooden or frame building exclusive of the foundation) then such building shall be torn down," we believe the rule too drastic and therefore unreasonable. But this part of the ordinance is entirely distinct from the first part and does not necessarily affect its validity.

It is therefore the opinion of the court that the first part of this ordinance is valid and applies to the repair of the defendant's building.

Proceeding in equity in which the town of Skowhegan, acting through its selectmen, sought to restrain the defendant from restoring to its former condition a business block owned by him which was damaged by fire in March, 1917. After the answer and replication were filed, a hearing was held before a single Justice upon the motion for a temporary injunction. The sitting Justice granted the temporary injunction and made certain findings which represent substantially his opinions upon the questions of law involved. The parties then being desirous of securing final determination of their rights as soon as possible, it was agreed, in order that the issues involved might be argued at the next term of the Law Court, that the temporary injunction be made permanent. This was done and an appeal was entered from the decree sustaining the bill and granting the prayer for a permanent injunction. Judgment in accordance with opinion.

Case stated in opinion.

*George W. Gower,* for plaintiff.

*Fred F. Lawrence,* for defendant.

SITTING: SPEAR, KING, BIRD, HANSON, MADIGAN, JJ.

SPEAR, J.   This proceeding is based upon two bills in equity by the *Inhabitants of the Town of Skowhegan* v. *Martin B. Heselton* of that town, praying for an injunction to restrain him from erecting or extensively repairing a wooden building situated within the fire limits of the plaintiff town.   The first bill comes up on defendant's appeal from the decree of the court granting the injunction.   The second bill comes on report.   The facts briefly stated are as follows:

The defendant is the owner of a two story business block on the southerly side of Water Street in Skowhegan Village within the fire limits of the town.   This block is 57 feet, 8 inches wide and $187\frac{1}{2}$ feet long.   It was damaged by fire, smoke and water in March, 1917. The reproduction cost of the building above the foundation under present conditions as estimated in round numbers would be from nineteen to twenty-two thousand dollars.   Among other things, it is alleged in the bill that the defendant intends to "fully complete, erect, alter, raise, roof, enlarge, add to, build upon with wood and extensively repair," the building in question.

It is unnecessary to review all the facts as those found by the sitting Justice are alone material.   He found that the repairs contemplated were "extensive and within the provisions of the ordinances."   The legal situation, only, upon this finding is involved and is as follows: April 27, 1917, the plaintiff town filed its bill in equity.   Answer and replication were duly made and a decree filed on the 8th day of May granting a temporary injunction, which by agreement, to expedite an appeal, was made permanent, from which an appeal was duly taken. At this time Section 4 of the town ordinances, which will be referred to later, did not provide for any appeal from the board of fire commissioners created by the ordinances.   On the 26th of May, 1917, at a legal meeting the town voted to amend this section by allowing the right of appeal, providing a method of procedure and, in case of damage by fire amounting to more than half the value of the building, that it should be torn down.

After this ordinance was adopted the plaintiff brought a new bill dated June 7th, 1917, under the amended ordinance but embracing the same state of facts, as no change had taken place in the meantime in the status of the burned building.   Answer and replication were duly filed.   This case was then reported upon a stipulation, the

material parts of which are as follows: "The finding of facts in the decree in the bill already heard and now filed, which finding was based upon evidence, not stenographically reported, shall constitute a part of the evidence in this bill.

"The evidence reported under the case already pending between the same parties is to be considered as in evidence and made a part of the report in this case so far as it may be material under the issues raised herein."

The next paragraph admits that the building was damaged to more than half of its value above the foundation at the time of the passage of the ordinance, May 26, 1917; also that there was no other building then located within the fire limits of the village which was damaged to the extent of more than one-half of its value above the foundation. These stipulations, and the fact found in the first case, that the repairs contemplated "were extensive," bring the reported case within the terms of the amended ordinance if the ordinance is valid and applies.

Accordingly, as the case now stands, the solution of the problems presented will be determined by a consideration of the reported case, if the reported case can be maintained under the amended ordinance. And it may be said here, we have no doubt it can. The burned condition of the building was existing precisely the same, when the ordinance was amended and when the bill was brought, as for some time previous. It is claimed, however, that the ordinance under the circumstances is discriminatory and made especially to fit the case of the defendant. But this contention is untenable. "The motive of the framers to discriminate against a certain class which does not appear from the language of the ordinance or statute will not make the enactment void or unconstitutional." *Soon Hing* v. *Crowley*, 113 U. S., 709. "Evidence as to the motive of the framers of the law or the influences under which they are enacted is not admissible for the purpose of nullifying an ordinance." 8 Enc. Ev., P. 38, and cases cited.

The original ordinance read as follows: "No building shall hereafter be erected or extensively repaired within the fire limits until plans shall have been approved by a majority of the board of fire commissioners and building permits are issued by the selectmen." It was amended by adding the following: "Whenever the fire commissioners to whom such plans shall have been submitted shall reject or refuse to approve the same, the owner or lessee of such building or

structure or his duly authorized agent may appeal from the fire com-
missioners to the board of selectmen." It then prescribes the method
of procedure. It further provides: "Every wooden frame building
within the fire limits which is or which may hereafter be damaged to
an amount not greater then one-half of the value thereof, exclusive of
the valuation of the foundation thereof at the time of such damage
may be repaired or rebuilt; but if such damage shall amount to more
than one-half of such value thereof, exclusive of the value of the
foundation, then such building shall be torn down." It then provides
for the method of appraisal.

Section 4, as amended, was adopted by the fire commissioners June
6, 1917. The ordinances under which the plaintiff proceeds are
Sections 1 and 4. Section 1 reads: "Within the fire limits of Skow-
hegan now or hereafter established there shall not hereafter be erected
any wooden building except small additions to existing structures and
those only with and by written consent of a majority of each of the
board of fire commissioners and selectmen. No shingled roof shall be
allowed within the fire limits only as above excepted. Section 1 was
not amended. This section, however, in express terms applies to
buildings "hereafter erected;" that is, after the passage of the ordin-
ances. As there is neither allegation nor proof that this building was
erected after the passage of this ordinance, Section 1 does not apply.
The remaining question, therefore, is, are the provisions of Section 4
above quoted, applying to the right of the defendant to make "exten-
sive repairs" constitutional and valid?

The by-laws and ordinances under which these bills are brought
have the following origin. Chap. 247 of the Private and Special
Laws of 1909 is entitled "An Act to Provide for a Fire and Police Com-
mission for the Town of Skowhegan."

"Section 1. Upon the acceptance of the provisions of this act, as
hereinafter provided, a board of fire and police commissioners is hereby
created in and for the town of Skowhegan to consist of three persons
who shall be appointed by the selectmen of said town." The act has
been accepted. This section creates the office of commissioners. It
is created by the State and not the town. Instead of being elective it
is to be filled by appointment by the selectmen. They are not muni-
cipal but public officers. They hold a legislative office. *Andrews*
v. *King,* 74 Maine, 224. They are not the agents of the town.
*Hamlin* v. *Biddeford,* 85 Maine, 308. "They act upon their own

responsibility and are not subject either to the control or direction of the inhabitants of the town." *Bulger* v. *Eden*, 82 Maine, 352.

When these commissioners are once appointed they then become legislative and not town officers. Upon this theory of their office and their functions, these officers, by the act of 1909, are given their powers and duties directly by the State, entirely independent of the right of the town to pass by-laws and ordinances tending to regulate their conduct in the discharge of their duties. It accordingly becomes unnecessary to consider whether the town was authorized to pass the ordinances under consideration or whether such ordinances if authorized could be applied to the case at bar. The act of 1909, Section 3, confers certain express powers and duties upon the commissioners, entirely independent of any action of the town. This section provides: "Said commissioners shall have power to adopt by-laws and ordinances, and perform all the duties imposed upon said town and municipal officers by chapter thirty of the Revised Statutes," and also all those relating to the "police and police officers in sections ninety-three and ninety-four of chapter four of the Revised Statutes (1916) but no change in the liability of said town shall thereby be created."

This section is broad and comprehensive, complete in itself, is not modified by any other provision, and was undoubtedly intended to place in the hands of this commission, not only all authority relating to the menace and control of fires and doing all things necessary thereto but also the complete control of the police department. We have no occasion to discuss the provision relating to the police officers. With reference to the powers and duties prescribed in the first clause, this section provides two distinct things: 1. Said commissioners shall have power to adopt by-laws and ordinances. 2. And perform all the duties imposed upon the town and municipal officers by chapter thirty of the Revised Statutes.

The report shows that they adopted the ordinance passed by the town. It is immaterial that it was first passed by the town. When the commissioners adopted it, it became theirs under an ordinance of their own adopted by authority of the express statute. The legislature imposed no limitation upon the scope of such ordinance. But like all regulations under the exercise of the police power it must stand the test of reasonableness. 2. The statute then confers very broad powers upon the commissioners,—all the duties imposed upon the

town and the municipal officers, by chapter thirty of the Revised Statutes. This chapter covers prevention of fires; inspection of buildings; protection of life in public buildings and investigation of fires. Section 25 provides for the appointment by the selectmen of the town of an inspector of buildings. Section 27 prescribes his duties: "He shall inspect all buildings while in the process of being repaired and see that all reasonable safeguards are used against the catching and spreading of fire." The phrase "being repaired" clearly applies to the case at bar.

It was the undoubted intention of the legislature to confer upon these commissioners the duties of the inspector named in this section. Accordingly, there are two grounds above named upon which this ordinance may be regarded as legally operative, granted by act of the legislature, each entirely free from powers delegated by the town. This leads to the inquiry: First, is the ordinance, adopted by the fire commissioners reasonable? Second, is section twenty-seven constitutional? Because it is evident that the power given by the ordinance is no greater than that given the inspector by section twenty-seven. Hence if section twenty-seven is constitutional the ordinance is.

This section, which directs the inspector to inspect all buildings while in the process of "being repaired" and see that all reasonable safeguards are used against the catching and spreading of fire, is sufficiently broad and comprehensive and was undoubtedly intended to give the building inspector authority without any ordinance, to do what the commissioners in the case at bar are authorized to do by virtue of the ordinance. He "may give such directions to the owner in writing as he deems necessary concerning the repairs." The commissioners must approve a plan for "extensive repairs." In the one case the inspector initiates the proceedings in writing. In the other, the owner must submit a plan. "Directions in writing" is amply broad to embrace a plan. If the statute is reasonable the ordinance is.

It therefore seems clear that the only inquiry herein involved is (1) the constitutionality and (2) reasonableness of chapter thirty of Revised Statutes. Of the constitutionality there can be no question. Take away the police power of the State and you at once put in jeopardy both life and property. It is the one inherent power of all government. It antedates and supercedes constitutions. It is founded upon the maxim that self-preservation is the first law of

nature. The police power is inherent in every form of government. In this State this function is declared to be "an exercise of that police power which is always necessarily retained by the people, in their sovereign capacity, for the public safety, and of which they cannot be deprived by prior legislative enactments, nor by chartered immunities. *Veazie* v. *Mayo,* 45 Maine, 560. It is a power over which the federal constitution has no control except to see that it is not used as an excuse for violating private or federal rights. Briefly, it has been thus defined: "The police power may be defined in general terms as that power which inheres in the legislature to make, ordain, and establish all manner of reasonable regulations and laws whereby to preserve the peace and order of society and the safety of its members, and to prescribe the mode and manner in which every one may so use and enjoy that which is his own as not to preclude a corresponding use and enjoyment of their own by others."

The authorities upon this subject are endless. The exercise of the power conferred by this statute is undoubtedly constitutional if it is reasonable.

We come, then, to the second inquiry, is it reasonable that the ordinance should require plans to be approved by the fire commissioners and permits to be issued by the selectmen?

Under the original ordinance, giving no right of appeal, the courts differ upon the validity of such a provision. But the weight of authority is in favor of sustaining it. But the amended ordinance giving the right of appeal is undoubtedly valid. It is an appeal which vacates the finding of the commissioners and submits the whole case de novo to the selectmen. If they conclude upon the evidence that the plans required are unreasonable in any regard they have power to modify them. In view of the great menace to property in a thickly settled part of a town or city, which may be due to a building so constructed that it may be calculated, by its very construction, to facilitate the communication and spread of fire, a provision for safety, that, in the end, is subject to the approval of two distinct boards of officers, one acting under the authority of the State, and the other, under the authority of the town, both living in the community and responsible to public opinion, cannot be said to be unreasonable.

We now come to a consideration of the second provision in the ordinance which declares, "if such damage shall amount to more than one-half of such value thereof (the wooden or frame building) exclu-

sive of the foundation then such building shall be torn down." This ordinance assumes that a portion of the value, up to 50% may be still remaining. We can conceive of many a case where the application of this rule would be confiscatory. It may be that such a rule is necessary in large cities where all buildings are required to be of brick or stone, but in small villages in country towns where nearly all the buildings are necessarily of wood, we believe the rule too drastic and therefore unreasonable. But this part of the ordinance is entirely distinct from the first part which we have already considered and does not affect its validity and is not in the present case involved.

It is therefore the opinion of the court that the first part of this ordinance is valid and applies to the repair of the defendant's building. The remaining question is whether equity will lie under the facts in this case. We think it will. The case comes up on report and every question which the evidence raises is open to the consideration of the court. Paragraph 12 of the bill alleges that the building, if repaired will become a nuisance by force of the ordinance and the statute. This paragraph may be regarded as surplusage, if the rest of the bill sets out a sufficient cause. We think section 11 accomplishes this end: "The said Martin B. Heselton threatens, purposes, intends and is about to proceed forthwith to fully complete, erect, alter, raise, roof, enlarge, add to, build upon with wood and extensively repair said wooden building, without any license or permit from the Selectmen or Board of Fire Commissioners of the said town of Skowhegan to do so, and without having plans therefor first approved by a majority of said Board of Fire Commissioners, and is now at work upon the same in violation of said By-Laws and Ordinances."

This section sets out an intended violation of the law. There is apparently no other legal process which can reach it. R. S., Chap. 82, Sec. 6, Paragraph XLV, Equity Powers, provides: "And has full equity jurisdiction according to the usage and practice of courts of equity, in all other cases where there is not a plain, adequate and complete remedy at law."

*First bill dismissed without costs.*
*Second: Bill sustained with costs.*
*Writ of permanent injunction to issue.*