HARVEY D. EATON ET ALS. *vs*. FREDERICK C. THAYER ET ALS.

Kennebec.     Opinion April 9, 1925.

*Plenary power is given to the Public Utilities Commission to inquire into any neglect or violation of the laws of the State by any public utility, and it is made obligatory upon the Commission to report all violations of law to the Attorney General, who is directed to institute all necessary proceedings for the enforcement of the laws of the State.*

The Kennebec Water District is a public utility, subject to the jurisdiction, control and regulation of the Public Utilities Commission, and its accounts are subject to examination and audit by the commission. Although declared to be a quasi-municipal corporation within the meaning of R. S., 1883, Chap. 46, Sec. 55, thereby subjecting the property of the inhabitants to liability to be taken to pay any debt due from the district, it is a public trust, and the chief executive officers are aptly called Trustees.

Its revenues are raised solely by rates paid by individual consumers for water actually used by them, and by its charter such rates are to be fixed upon a cost-of-service basis, as near as may be.

While the right of citizens and taxpayers to apply to the court for preventive relief in the case of threatened unlawful action by municipal officers is and should be upheld, the practice of entertaining bills by citizens and rate payers should not be extended to organizations like the Kennebec Water District, for remedial relief by way of restitution after the commission of an alleged illegal act which affects the entire community, and is not a special wrong to particular individuals.

In the instant case if the Trustees of the District have acted in violation of law in passing the votes alleged to be unwarranted, and in acting under them, proceedings to protect the administration of the trust, and for restitution of funds paid out by virtue of such votes, should be instituted by the Attorney General upon his own initiative, or upon report of the Public Utilities Commission, against all the Trustees.

On report. A bill in equity brought by fourteen citizens and property owners of the Kennebec Water District against one of the trustees, a former trustee, and a former superintendent of said district, the district itself also being a party defendant, seeking restitution to the treasury of the district certain sums of money paid to the individual defendants severally in accordance with votes of

the trustees, which payments plaintiffs allege were illegally made and contrary to. the provisions of the act creating the district. The defendants raised the question of jurisdiction. At the conclusion of. the evidence on a hearing by agreement of the parties the cause was reported to the Law Court for final determination. The court holds that it has full jurisdiction in equity over the corporation and its trustees, but that the proceeding should be instituted by the Attorney General, not by individual rate payers. Bill dismissed.

The case fully appears in the opinion.

*Harvey D. Eaton and George M. Chapman*, for plaintiffs.

*Pattangall, Locke & Perkins*, for defendants.

SITTING: WILSON, C. J., PHILBROOK, MORRILL, STURGIS, BARNES, JJ.

MORRILL, J. The Kennebec Water District comprising the territory and people constituting the city of Waterville and the Fairfield Village Corporation, was organized under Chapter 200 of the Private and Special Laws of Maine of the year 1899, for the purpose of supplying the inhabitants of said district and of the towns of Benton and Winslow and all said municipalities with pure water for domestic and municipal purposes. By Section 5 of said act "all the affairs of said water district shall be managed by a board of trustees composed of five members;" they were directed to organize by the election of a president and clerk, and were authorized when necessary to choose "a treasurer and all other needful officers and agents for the proper conduct and management of the affairs of said district." They were also empowered to "ordain and establish such By-laws as are necessary for their own convenience and the proper management of the district's affairs," and to "incur such expenses as may be necessary."

The district was granted very comprehensive · power to take and hold for its purposes "sufficient water," and real estate "necessary for erecting dams, power, reservoirs or for preserving purity of the water and water shed, and for laying and maintaining aqueducts." It was granted the right of eminent domain, the right to use streets and highways for its pipe lines, and elaborate provision was made for the appraisal and acquisition of the property of the Maine Water Company.

The trustees were authorized to issue bonds to an amount sufficient to pay expenses incurred in the acquisition and purchase of the property of Maine Water Company, and to secure a new source of supply. The duty was imposed upon the trustees of establishing rates, uniform in their application within the district, and so established as to provide revenue: (1) To pay the current running expenses for maintaining the water system and provide for such extensions and renewals as might become necessary: (2) To provide for payment of interest on the indebtedness of the district: (3) To provide for a sinking fund by annual contributions: (4) Any surplus remaining at the end of the year is to be divided between the municipalities composing the district in the same proportions as each contribute to the gross earnings of the district's water system.

Although by Section 10 of said act said district is "declared to be a quasi municipal corporation within the meaning of section fifty five, chapter forty six of the revised statutes" of 1883, thereby subjecting the property of the inhabitants to liability to be taken to pay any debt due from the district, it is evident upon examination of the act that the Kennebec Water District widely differs from the ordinary municipal corporation. No power of taxation exists; its revenues are raised solely by rates paid by individual consumers for water actually used by them; the water rates do not create a lien on the property supplied with water. The inhabitants do not have direct voice in the management of the affairs of the district; no meetings of the inhabitants are provided for; the trustees are chosen, two by the municipal officers of Waterville, two by the municipal officers of the Fairfield Village Corporation, and one is appointed by the County Commissioners of Kennebec County from outside the district. The Kennebec Water District is a corporate organization for the administration and financial management of a water supply for the inhabitants of the territory included therein and of the towns of Benton and Winslow, said in the brief for the plaintiffs to number twenty thousand people. While declared to be a quasi municipal corporation, it is a public trust and the chief executive officers are very aptly called Trustees. It is a public utility, and is subject to the jurisdiction, control and regulation of the Public Utilities Commission, R. S., Chap. 55, Sec. 15. Its accounts are subject to examination and audit by the Commission. R. S., Chap. 55, Sec. 23, 24, and by its charter its rates are to be fixed upon a cost-of-service basis, as near as may be.

The present bill is filed by fourteen citizens living and owning property in the district and paying water rates therein, "in behalf of themselves and all others similarly situated," against one of the present board of trustees, who has held that office since the organization of the district, a former trustee, and a former superintendent, who has deceased since the bill was filed. The district is also made a party defendant.

The bill seeks to compel the restitution to the treasury of the district of certain sums of money paid to the individual defendants severally in accordance with votes of the trustees, which plaintiffs allege are contrary to law and to the express provisions of the organic act of the district. It is alleged in the bill, and admitted by answer, "that on the 19th day of May, A. D., 1921, one of the plaintiffs made demand in writing upon the Trustees to recover and return to the treasury of the District all said sums thus illegally paid out," and that the Trustees declined to take such action.

The defendants at once challenge the jurisdiction of this court to grant the relief sought, upon the bill of individual rate payers, and very soundly maintain that this court has no jurisdiction of the cause under R. S., 1916, Chap. 82, Sec. 6, Par. XIII., and they urge that the authority of the court to act is limited by that statute. In 1874, however, this court was granted full equity jurisdiction, according to the usage and practice of courts of equity in all other cases where there is not a plain, adequate and complete remedy at law. Since this enlargement of the equity powers of the court, its jurisdiction to grant preventive relief has been regarded as not limited as by Paragraph XIII. *Blood* v. *Beal,* 100 Maine, 30.

But this bill does not seek preventive relief against anticipated or threatened unauthorized action by the Trustees. It seeks remedial action only after the commission of an alleged illegal act.

We think that this court has full jurisdiction in equity over this corporation and its trustees, but that the proceeding should be instituted by the Attorney General, not by individual rate payers. "In respect of property or funds held by municipal corporations in trust or clothed with public duties, equity, in virtue of its jurisdiction in respect of trusts and property, has always asserted its power to see that the trusts were observed and their public duties in respect of such property discharged. In England, and probably also in this country, the bill may in such cases be filed against the municipal

corporation and its officers by the Attorney General on his own motion or on behalf of the corporators, taxpayers or persons interested." 4 Dillon on Mun. Corp., 5th Ed., Sec. 1574. The leading English authorities are cited on brief of plaintiffs' counsel: *Attorney General* v. *Dublin*, 1 Bligh N. S., 312. *Attorney General* v. *Liverpool*, 1 Mylne & Cr., 343; 13 Eng. Ch. 343. *Attorney General* v. *Poole*, 4 Mylne & Cr. 17. *Attorney General* v. *Wilson*, 9 Simons 30, affirmed 1 Cr. & Ph. 1.

In this country, according to Judge Dillon (Section 1577) "the weight of authority seems to be that the Attorney General of a State, or its other public law officer, has by virtue of his office the right in his name, or in the name of the State, upon the relation of persons interested, to bring in cases which are properly of equitable cognizance and which affect the public, a bill in equity to prevent municipal corporations from exceeding the line of their lawful authority, or to have their illegal acts set aside or corrected." *Attorney General* v. *Detroit*, 26 Mich., 263, in which Mr. Justice Cooley (Page 266) defines at length the kind and degree of abuse of corporate power which will justify action by the Attorney General. *Attorney General* v. *Boston*, 123 Mass., 460, 478. *Davis* v. *New York*, 2 Duer, 663.

The act establishing the Kennebec Water District was the first of a series of acts in this State, creating organizations for the public ownership and control of the water supply of communities, which would not be obnoxious or subject to the constitutional limitation of municipal indebtedness. In that respect the act was held to be valid in *Kennebec Water District* v. *Waterville*, 96 Maine, 234. During the next seven sessions of the Legislature twenty-four similar acts were passed and such organizations have been successfully put into operation in many communities large and small, notably in Augusta, Portland, Gardiner, Bath, Brunswick; these later acts may differ from the Kennebec act in some details; in some the Trustees are chosen by the qualified voters of the district, who otherwise have no direct voice in the management of its affairs. The distinguishing feature of all is the creation of a corporate organization in the nature of a public trust for the acquisition, financing and administration of the water supply of the several communities, managed by officials known as Trustees, financed not by taxation but by the rates paid by individual consumers for the water used by them.

Some of the most prominent citizens and experienced business men of the communities have acted upon the boards of trustees. Many hundred thousand dollars in securities have been issued to finance these undertakings, and, presumably attributable to wise management, not a single default on the securities has occurred.

In the twenty-five years which have elapsed the instant case is the first to come before the court in which misappropriation of the funds of a district by the Trustees has been charged. We therefore, feel at liberty, and that it is the duty of the court to adopt a rule of procedure which will insure the preservation and efficient management of these essential elements of community life, and at the same time protect public spirited citizens, who may be disposed to serve as Trustees, from vexatious litigation.

We are aware of a line of cases in this country, holding that individual taxpayers may maintain a bill in their own names to compel restitution of funds illegally received by municipal and county officials in disregard of statutory provisions, either as payments for alleged services or under contracts prohibited by law. Some of the most familiar of these cases are: *Walker* v. *Village of Dillonvale*, 82 Ohio St., 145; 92 N. E., 222; 19 Ann. Cas., 773. *Quaw* v. *Paff*, 98 Wis., 586; 74 N. W., 369. *Land, Log & Lumber Co.* v. *McIntyre*, 100 Wis., 245; 75 N. W., 964; 69 Am. St., 915. *Johnson* v. *Black*, 103 Va., 484; 49 S. E., 635; 106 Am. St., 890. *Stone* v. *Bevans*, 88 Minn., 127; 92 N. W., 520; 97 Am. St., 506. *Zuelly* v. *Casper*, 160 Ind., 455; 67 N. E., 103; 63 L. R. A., 133. *Griffin* v. *Drennen*, 145 Ala., 128; 40 So., 1016. *Independent Sch. Dist. No. 5* v. *Collins*, 15 Idaho, 535; 98 Pac., 857; 128 Am. St., 76. *McKenna* v. *McHaley*, 62 Ore., 1; 123 Pac., 1069. In some of these cases the position of taxpayers as parties plaintiff rests upon the theory that they in common with other property holders of the municipality may be subjected to increased taxes; *Crampton* v. *Zabriskie*, 101 U. S., 601, 25 L. Ed., 1070, although it is a case of preventive relief by injunction, is cited. *Walker* v. *Dillonvale*, supra. Other cases rely upon the analogy of suits by stockholders of private corporations. *Quaw* v. *Paff*, supra. *Zuelly* v. *Casper*, supra. In others the want of other remedy is the basis of the jurisdiction, the corporation being joined as a party defendant. *Land, Log & Lumber Co.* v. *McIntyre*, supra. In some cases where an injunction has been granted to restrain future misappropriation, a decree for restitution has been made as incidental

to the relief by injunction.   *Frederick* v. *Douglass Co.*, 96 Wis., 411, 425.   *Webster* v. *Douglass Co.*, 102 Wis., 181.

In *Attorney General* v. *Detroit*, supra, Mr. Justice Cooley speaks of the practice of entertaining such bills as "carried to an unwarranted extent," and restricted in that State by the decision in *Miller* v. *Grundy*, 13 Mich., 540.   In *Cathers* v. *Moores*, 78 Neb., 17; 113 N. W., 119; 14 L. R. A., (N. S.) 298, it is said that "the courts have gone to extreme lengths in entertaining suits by taxpayers against local boards and officials."

Confining our decision to the facts and to the type of quasi municipal corporate organization presented by this case, we hold that the doctrine of the cases above cited sustaining proceedings by individual taxpayers, should not be extended to this case.   In our view such a proceeding by individuals is inappropriate when the violation of a franchise to exercise a public trust of this character for the public welfare is charged, and remedial relief after the commission of the alleged illegal act is alone sought; the element of speedy action where preventive relief is sought, is not present; the direct personal interest of the rate payer, as distinguished from the municipal taxpayer, is negligible where the revenues are raised, not by taxation, but by rates paid by individual consumers for water used by them, and where the rates, service and issue of securities are under the jurisdiction of the Public Utilities Commission.

An examination of the bill before us confirms this view.   The only charge of fraudulent action in terms to be found in the bill was abandoned on the day of hearing before the single Justice; it related to a payment of five dollars each to Messrs. Thayer and Nye for attendance at an adjourned meeting of the Board of Trustees, the record of which, it is charged, "was made solely for the fraudulent purpose of enabling the trustees to draw pay as for attending a meeting when in truth and in fact they were rendering service for which the law provides that they shall receive no compensation." This serious charge, although the amount is trivial, made against the entire board of trustees, was abandoned at hearing.   The payments to Mr. Hall for which recovery is sought were made to him for salary as Assistant Superintendent under a vote of the Trustees passed March 22, 1921.   The record fails to disclose anything unwarranted in these payments.   The payments of importance in the case were made to Dr. Thayer, one for $3,000 under a vote of the Trustees

passed November 30, 1920, and payments for salary as General Manager at the rate of $100 per month under a vote of the Trustees passed January 4, 1921; the regularity of these meetings has not been questioned. All of these payments, it is charged "were utterly unwarranted, and in each instance constituted a misappropriation by the Board of Trustees of the Water District."

The importance of this case is forcibly stressed in the brief filed in behalf of the plaintiffs. "Financially," it is said, "the case is of trifling importance to any individual. The plaintiffs of course have no personal interest except as citizens and rate payers of the District. . . . . But the importance of the case from the standpoint of common honesty and good government is transcendent." Inferentially, at least, from reading the brief the case in the view of counsel is comparable with notorious cases of official corruption. After a careful consideration of the evidence we state frankly the conviction that the record discloses nothing to impeach the honesty of the Trustees in these transactions; their actions were taken after due deliberation; instead of making "a handsome present to their oldest associate out of the public funds," we are convinced that they acted honestly, and with the conviction that the payment was justly due to Dr. Thayer. It may be that their action cannot be justified under the terms of the Act relating to compensation of the Trustees. Upon that question we express no opinion. But any charges of dishonesty or venality are unfounded.

It is evident, also, from this record that if this action can be entertained, the same or another set of citizens and rate payers, or any one citizen and rate payer, may bring a similar bill against Mr. Warren, and against any other Trustee who has received payments for any services to the District in excess of the allowance for attendance at meetings granted by the act. Such opportunity for multiplicity of suits is not for the public interest. *Cathers* v. *Moores*, supra. While upholding to the full extent the right of citizens and taxpayers to apply to the court for preventive relief in the case of threatened unlawful action by municipal officers, we think that the practice should not be extended to organizations like the Kennebec Water District, for remedial relief by way of restitution after the commission of an illegal act which affects the entire community, and is not a special wrong to particular individuals.

By R. S., Chap. 55, Sec. 5, plenary power is given to the Public Utilities Commission to inquire into any neglect or violation of the laws of the State by any public utility doing business therein, or by its officers, agents or employees, and it is made obligatory upon the commission to report all violations of law to the Attorney General, who is directed to institute all necessary actions or proceedings for the enforcement of the laws of the State.

If the Board of Trustees has erred in its interpretation of the organic act of the District, in passing the votes alleged to be unwarranted, its action is in violation of law, and we hold that proceedings to protect the administration of the trust, and for restitution of funds paid out by virtue of votes passed in violation of law, should be instituted by the Attorney General upon his own initiative, or upon report of the Public Utilities Commission, against all the Trustees. Proceedings against loan and building associations, (*Ulmer* v. *Loan and Building Association,* 93 Maine, 302) and against trust companies (*Craughwell* v. *Trust Company,* 113 Maine, 531) present analogous cases. It may be that cases will arise in which the Attorney General may proceed upon the relation of interested parties, but such cases must necessarily be exceptional, based upon want of other remedy, and we express no opinion on the subject. The language of the court in *Ulmer* v. *Loan and Building Association,* supra, is pertinent: "It is to be observed that these institutions possess a public character, and it is for the interest of the public, not only that they shall be subjected to judicial investigation when they ought to be, but also that they shall not be so subjected when they ought not to be." It cannot be presumed that the Commission and the Attorney General will fail to act in a proper case.

We, therefore, hold that the plaintiffs have no standing in court to maintain this bill in their own names.

*Bill dismissed.*