FRED W. BAYLEY ET ALS

*vs.*

INHABITANTS OF THE TOWN OF WELLS ET ALS.

York.    Opinion, August 23, 1934.

*John P. Deering,* for plaintiffs.
*Hiram Willard,*
*Ray P. Hanscom,* for defendants.
*Walter E. Hatch,* for Town of Wells.

Sitting: Pattangall, C. J., Dunn, Sturgis, Barnes, Thaxter, Hudson, JJ.

Thaxter, J. This is a bill in equity brought by fifteen taxpayers of the Town of Wells against the town, its selectmen and its treasurer, and against the Ogunquit Village Corporation seeking an interpretation of Section 3 of Chapter 203 Priv. & Spec. Laws of Maine, 1913, establishing the Ogunquit Village Corporation. The bill also asks that the officers of the town of Wells be restrained from paying certain money claimed to be due to the village corporation from the town. An amendment to the bill prays for the appointment of a master and for an accounting. After a hearing the cause is before this court on report, on bill, answer, replication and all admissible evidence.

The litigation grows out of a long standing dispute between two municipal corporations formerly comprising the Town of Wells. By the act of the legislature above referred to the Ogunquit Village Corporation was created within the limits of the Town of Wells. This act became effective July 1, 1913 subject to acceptance by the town, which was given October 9th of the same year. To the village were transferred certain of the functions formerly exercised by the town in the area comprising the village, particularly those relating to police, fire protection, construction and maintenance of roads, sewers, parks, public wharves and landings, and to all matters concerning water supply and public lighting.

The village corporation was given no authority to assess taxes, but the act provided that sixty percent of all town taxes, exclusive of state and county taxes, collected from inhabitants and estates within the territory of the new corporation should be paid by the town to the Ogunquit Village Corporation.

The present controversy relates to money claimed by the plaintiffs to be due the Town of Wells from the village for the cost of maintaining schools and schoolhouses within the limits of Ogunquit.

That portion of the act relating to this matter reads as follows:

"Sec. 3. (in part). With reference to the common schools which are within the territory of said corporation there shall be paid to the town of Wells by this corporation whatever amount is the actual net cost to said town of Wells for maintaining said common

schools and schoolhouses, located within the limits of said corporation, reference being had to the amount raised therefor by taxation and the amount which said town of Wells received from the State of Maine for the maintenance of common schools. Said village corporation shall annually pay to the town of Wells the sum of seven hundred dollars to be used by said town in maintenance of its high school."

Almost immediately after the passage of the act creating the village disputes arose over its interpretation. In 1923 these culminated in the filing of a bill in equity, and the case was reported to the Law Court. The opinion, *Ogunquit Village Corporation* v. *Inhabitants of Wells*, 123 Me., 207, 122 A., 522, determined among other things that the phrase "actual net cost" in the above section of the act meant the gross cost of maintaining schools and schoolhouses less the amount received from the state in respect to the scholars and estates in the village, and also less the sum received as income on the town school fund, if any, appointed in the same way.

Unfortunately this decision did not end the trouble. The Town of Wells claimed that Ogunquit should pay the actual net cost of maintaining the common schools and schoolhouses out of the sixty percent of the taxes, which were paid back to it after Ogunquit had received credit on account of the state school fund. Ogunquit claimed that the town should pay for the maintenance of common schools and schoolhouses in Ogunquit out of the forty percent of the taxes retained by the town, which were collected from the territory of Ogunquit Village. Until 1932 the accounts between the town and the village appear to have been settled by the town officials on the basis of their construction of the legislative enactment and in accordance with their own methods of accounting. The controversy then seems to have flared up anew; and on petition of Fred W. Bayley, one of the plaintiffs in this action, an article was inserted in the warrant for the annual town meeting of Wells in order that the matter might be acted on by the duly qualified voters of the town. At the meeting Mr. Bayley moved that the Town of Wells bring a suit in equity against the Ogunquit Village Corporation for the cost of the Ogunquit elementary schools, which was claimed to be unpaid. This motion was finally laid on the table, and it was voted that a committee of three be appointed

to act and cooperate with a committee appointed by the Ogunquit Village Corporation. Committees were appointed from both the town and the village. The report of this joint committee was filed and accepted by the town and by the village corporation in meetings, duly called, by Ogunquit on April 4, 1932, and by Wells on December 6, 1932; and another joint committee was constituted to present to the legislature amendments to the charter of the Ogunquit Village Corporation for the purpose of carrying into effect the recommendations of the original committee. On December 8, 1932 the bill in equity now before us was filed.

The report of the original committee is significant. The members of it seem to have approached the subject in a conciliatory spirit, without bias, and with a sincere purpose to end a controversy which was causing expense to both the town and the village and engendering ill-will between them. The report says: "Your committee have not attempted to decide the issue involved, but have worked more along the lines of a compromise and for the best interest of both parties." They then urge the two sides to "bury the hatchet" so that the issue shall not again cause trouble between them. The acceptance of the compromise by the voters in their respective meetings is evidence of a similar desire.

The committee recommended in brief that the Town of Wells should set off its claim for money past due against $20,000, which Ogunquit had contracted to pay on an elementary school in Ogunquit; that the Town of Wells should wholly maintain the schools and schoolhouses within the territory of Ogunquit; that Ogunquit should not receive the sixty percent or in fact any percentage on the portion of any money raised and appropriated by the town for common schools, collected within the territorial limits of Ogunquit, unless said portion of said town appropriation so collected within the territory of the village should exceed five thousand dollars; that the amount which Ogunquit but for this provision would receive should be paid by the Town of Wells to the Wells School Board to raise and improve the standard of the Wells High School; that Ogunquit should be relieved from the obligation to contribute $700 annually for the support of the High School.

These major provisions of the report are cited, not because the present case is concerned with their interpretation, but to show

that the two parties to the dispute were making an earnest attempt to arrive at a reasonable adjustment of their differences.

The plaintiffs argue that the act of the legislature purporting to ratify the agreement between the town and the village is void, because it is an interference by the legislature with a judicial controversy, which was pending in court, and hence violates the provisions of Article III of the state constitution which prohibits the exercise by the legislative, executive or judicial departments of any powers properly belonging to either of the others. The defendants question the right of the plaintiffs to bring this bill.

Individual taxpayers of a municipal corporation have not ordinarily the right to sue for remedial relief, where the wrong, for which they seek redress, is one which affects the entire community and not specifically those bringing the action. *Eaton* v. *Thayer*, 124 Me., 311, 128 A., 475; *Tuscan* v. *Smith*, 130 Me., 36, 153 A., 289. This rule has its origin in a sound public policy, which holds that municipal officers should not be subjected to litigation at the suit of every dissatisfied taxpayer. This restriction, however, does not apply where the taxpayer seeks to prevent the commission by town officers of an illegal act. Both under the special provisions now embodied in Rev. Stat. 1930, Ch. 91, Sec. 36, Par. XIII, and under the general equity powers given to the Supreme Judicial Court in 1874, the individual taxpayer has the right to apply for preventive relief. *Tuscan* v. *Smith*, supra.

In the case before us, however, these plaintiffs are seeking remedial relief. Primarily they ask for an accounting of money claimed to be due. The injunction prayed for against the payment of the money by Wells to Ogunquit is merely incidental to such accounting. Under the well established rule in this state, they have no standing in court.

These observations might well end this case. That there may, however, be no misapprehension of our views on the suggested constitutional question, a short comment on it is perhaps not out of place. Neither these municipal corporations, nor the legislature in ratifying their acts, were usurping any judicial function. The parties were seeking not to interpret the legislative act creating the Ogunquit Village Corporation, not to decide a legal controversy, but to settle peaceably a dispute between themselves. It

would be a sad commentary on the purpose of a constitutional limitation, if it should be so interpreted as to prevent the consummation of so beneficent a result. Whether the towns might themselves without the sanction of the legislature have accomplished this end, it is unnecessary to decide. The concurrent action of the municipalities and the legislature certainly did no harm. That this town and this village should be committed to costly and continuing litigation on this subject at the instance of any taxpayer, without themselves having the right to control it or to end it, would be an anomaly not required by any constitutional mandate.

*Cause remanded to the sitting Justice for a decree dismissing the bill.*