Johanna E. R. von TILING, Harold E. Hackett, Pamela A. Berry, Diane Kremn Nolan, Agnes N. Benton, Marguerite E. Black, Theodore E. Potter

v.

CITY OF PORTLAND, King Resources Company.

Supreme Judicial Court of Maine.

Aug. 21, 1970.

James R. Flaker, Thomas Schulten, Portland, for plaintiffs.

Barnett I. Shur, Robert D. Schwarz, Portland, for defendant.

Before WILLIAMSON, C. J.[1], and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On June 16, 1969 the City Council of Portland (City) voted to change a part of the municipal zoning ordinance to change the zoning of a part of Long Island in the city, owned by King Resources Company (King) from Residential–3 to Industrial–3 use.

Chapter 102 of the City's ordinance provides for the initiative and referendum on certain matters of municipal concern but requires that the petitioners must sign the petition in the office of the City Clerk.

Some of the Plaintiffs had earlier petitioned the City Council for a referendum on that change in the zoning ordinance but the attempt had failed because of insufficient signatures on the petition. The other Plaintiffs allege that because of illness, infirmity or the press of business they were unable to go to the Clerk's office to sign the petition.

Plaintiffs then sought the Court's declaratory judgment that this provision of the ordinance requiring that such a petition be signed only in the City Clerk's office discriminates against them and denies them the equal protection of the laws guaranteed them by Section 3 of Article 1 of the Constitution of Maine and by the Fourteenth Amendment to the Constitution of the United States. The Plaintiffs also asked that the Court stay the effective date of the ordinance amendment changing the zone to Industrial–3 and that it enjoin King from using its land on Long Island contrary to a use allowed in a Residential–3 zone until the termination of this action.

Both Defendants answered, denying some of Plaintiffs' allegations. After a pre-trial conference attended by the Single Justice and counsel for the three parties and before any evidence was taken, the Justice issued a pre-trial order in which he

1. Sat at argument but did not participate in decision.

1) Held that the complaint fails to state a cause of action on the basis of which the relief sought could be granted.

2) Specifically found that the provision of Sec. 102.1, Chap. 102 of the initiative and referendum ordinance of the City of Portland is reasonable and therefore not violative of any provision of either the State or Federal Constitutions.

3) Denied plaintiffs prayer for both temporary and permanent injunctions.

The matter comes to us on Plaintiffs' appeal. Although no evidence was admitted before the Single Justice the parties agree that we may take judicial notice of the ordinance in question.

Our first problem is the question of the Plaintiffs' standing to bring the action before the Court.

■ In examining the status of citizens who seek relief against municipal action, our Court has distinguished between preventive and remedial relief. Individual tax payers of a municipal corporation have not ordinarily the right to sue for remedial relief where the wrong for which they seek redress is one which affects the entire community and not specifically the individuals bringing the action. Where the injury claimed is one shared equally by all the members of the community the action must be brought by the Attorney General of the State as representative of not only the particular Plaintiffs who seek remedial relief but the entire community. LaFleur ex rel. Anderson v. Frost, 146 Me. 270, 80 A.2d 407 (1951); Eaton v. Thayer, 124 Me. 311, 128 A. 475 (1925); Bayley v. Wells, 133 Me. 141, 174 A. 459 (1934).

In this case the Plaintiffs are seeking both preventive relief (injunction against both King and the City) and remedial relief (a declaration that the portion of the ordinance complained of is unconstitutional). The petition alleges that all the Plaintiffs are residents, summer residents or property owners of islands in Casco Bay in Portland who would suffer irreparable harm in the use of their property by the utilization of King's Long Island property in the manner proposed. It also asserts that certain of the Plaintiffs, by reason of age, infirmity, or the press of business were unable to go to the City Clerk's office to sign the petition although they desired to request such a referendum and as a result suffered discrimination from the operation of the ordinance.

The procedure followed by the Justice in denying Plaintiffs' prayers in his pre-trial order was somewhat in the nature of the granting of a motion to dismiss. M.R.C.P. Rule 12(b) (6). In now testing the action of the Single Justice in denying the relief sought without evidence having been presented we assume the correctness of all Plaintiffs' factual allegations.

■ The Plaintiffs' ultimate purpose is to prevent King from making its intended use of its property in Casco Bay but the immediate complaint addressed to us concerns their inability to get to the Clerk's office to sign the petition for referendum. Their status is now measured not by the ultimate effect of King's proposed use upon them as against its effect upon other members of the community but by the effect of the requirement as to signing in the Clerk's office which they—aged, infirm and busy— were unable to do but which the public in general would not find insurmountable. These Plaintiffs argue that they have standing to attack the constitutionality of the ordinance. We agree.

The Constitution of Maine, Article 4, Part 3, § 21, in general terms, empowers cities to establish by ordinances the initiative and referendum in regard to their municipal affairs. Acting under this authorization, in the Portland City Council passed, and the voters ratified, the ordinance now in question, other parts of which were examined by this Court in LaFleur ex rel. Anderson v. Frost, supra.

Plaintiffs complain that the first paragraph of section 102.1 discriminates against

them in that it effectively denied them—too aged, infirm or busy to get to the City Clerk's office—the right to petition for referendum of the City Council's action of June 16, 1969. That paragraph reads:

"*Section 102.1* The submission to the vote of the people of any proposed ordinance dealing with legislative matters on municipal affairs or of any such ordinance enacted by the City Council and which has not yet gone into effect, may be accomplished by the presentation of a petition therefor to the City Council in the manner hereinafter provided. After passage and approval of this ordinance as provided herein, neither this ordinance, not ordinances dealing with appropriations, tax levy, or with wages or hours of city employees shall be subject to the initiative and referendum provisions herein established. Any ten qualified voters of the City of Portland may originate a petition putting in operation the initiative or the referendum by signing such petition during office hours at the office of the City Clerk. Whenever requested by ten such voters, the City Clerk shall prepare the proper petition with a copy of the submitted ordinance either printed on said petition or attached thereto and upon its being signed by said ten voters, the City Clerk shall file the petition and shall, during office hours for thirty business days thereafter, keep the same open for signature by qualified voters of the City, and no such petition shall be signed or presented for signature at any place other than the Clerk's office."

The Constitution is only permissive and leaves to the City Council and the electors of a city the determination of the details of procedure to be followed in invoking the initiative and referendum. As the Legislature has not seen fit to establish a uniform procedure the cities are free to adopt machinery which appears best suited to their particular needs. The ordinance adopted, however, must not deny the citizens any of their constitutional rights as members of the electorate.

We ask ourselves the same question which we said was presented to us in our consideration of other phases of this ordinance in *LaFleur* (146 Me. page 284, 80 A. 2d page 414).

"Is any invalidity disclosed in the machinery adopted which would require a determination that it is not a valid system under the Constitution?"

Specifically, does the requirement that the petition must be signed in the office of the City Clerk discriminate against Plaintiffs, aged, infirm or busy as they were, and deny them equal protection of the law as against other voters who would not be prevented from complying with the ordinance if they chose to seek referendum on proposed municipal ordinances?

█ We take it as proved that the effect of section 102.1 was to deprive some of these Plaintiffs of the opportunity of signing the petition in question. The test is whether the ordinance offends constitutional guarantees and whether or not the provision is reasonably designed to carry out a proper legislative purpose. State v. Starkey, 112 Me. 8, 90 A. 431 (1914).

We stated the applicable rule in Lewiston v. Grant, 120 Me. 194, 113 A. 181 (1921):

"It is well-settled law that ordinances and by-laws of municipal corporations, to be valid, must be reasonable, and not oppressive, in their character. Any unreasonable ordinance or by-law is void. Whether a by-law or ordinance is reasonable or oppressive in its character, or otherwise, is a question of law for the courts. This principle, however, does not apply where the municipal corporation does that which it is expressly authorized to do by the Legislature, but, where the power to act is a general one, the ordinance or by-law passed in pursuance of

it must be a reasonable exercise of that power or it is invalid. Courts are cautious, however, in applying the rules relative to the authority of the municipal corporation to act, and discretionary powers, except in extraordinary cases to restrain gross abuses, are not subject to judicial control. Jones v. Sanford, 66 Me. 585; State v. Robb, supra; [100 Maine 180, 60 A. 874] State v. Phillips, 107 Me. 249, 78 Atl. 283. See, also, [Inhabitants of Town of] Skowhegan v. Heselton, 117 Me. 17, 102 Atl. 772."

It has also been said:

"The power of a court to declare an ordinance void because it is unreasonable is one which must be carefully and cautiously exercised. Courts are reluctant to and may not interfere with municipal legislation except when it arbitrarily interferes with private rights, and are slow to declare ordinances invalid because unreasonable, where the power to legislate upon the subject has been conferred upon the common council. In order to declare a municipal ordinance invalid because it is unreasonable or unconstitutional, the invalidity must be clearly and satisfactorily shown, and must be palpable and manifest. The mere fact that it is difficult to produce evidence to show that an ordinance is unreasonable is a factor favoring constitutionality rather than the reverse, and where the evidence leaves the court in doubt as to the reasonableness of an ordinance it seems that the doubt must be resolved in favor of the validity of the ordinance." 37 Am.Jur., Municipal Corporations, § 179.

The legislative purpose of the contested provision becomes clear when we read it in conjunction with section 102.2 which sets out the form of petition to be used and which concludes with the certification:

"I, _____, the City Clerk of the City of Portland do solemnly affirm that the signatures appended hereto are the signatures of the persons whose names they purport to be.

_____

City Clerk"

The City Council intended the disputed provision to be a safeguard against fraud in obtaining use of the referendum process, and the electorate ratified its action. The purpose of the relevant language in the two sections was to make possible scrutiny by a responsible official as to the identity of persons who have deposed that they are legal voters of the City.

This legislative purpose is proper. The interruption of operation of a municipal ordinance for the purpose of referendum is not of trivial import. Did the legislative body act reasonably in an effort to obtain this end? We cannot say it did not. The machinery chosen may not prevent all fraudulent signatures on petitions but it appears reasonably capable of discouraging such fraud. It is conceivable that other methods could be devised to obtain the same result but the legislative body of the City has in its discretion chosen this method and we do not find its choice unreasonable or oppressive.

■ This provision of the ordinance applies to all voters. We do not find it to be arbitrary or unreasonable. State v. Old Tavern Farm, Inc., 133 Me. 468, 180 A. 473 (1935). Undoubtedly it works difficulty from time to time on some other voters as it did here to some of these Plaintiffs. It is inescapable that many municipal ordinances disadvantage some individuals. It cannot be expected that a municipal ordinance will affect all persons with exact equality. An ordinance forbidding parking of vehicles in certain areas necessarily makes access to those areas more difficult for the aged and infirm than for the youthful and vigorous. State v. Phillips, 107 Me. 249, 78 A. 283 (1910). Before the

passage of our absent voting law some individuals were unable because of age, infirmity or business commitments to travel to polling places and thus lost the opportunity to cast their ballots that other people enjoyed. If the legislation is reasonably suited to serve a proper purpose a court will not nullify it because it works hardship and disadvantage in individual cases. An ordinance is not invalid as violating the equal protection clause if within the spirit of its operation it affects alike all persons similarly situated. 37 Am.Jur., Municipal Corporations, & 158.

We find that Chap. 102, § 102.1 is reasonable and not violative of the guarantees of equal protection found in the Constitutions of the State of Maine and of the United States of America.

Appeal denied.

POMEROY, J., did not sit.

WILLIAMSON, C. J., sat at argument but did not participate in decision.