## State of Maine *vs.* J. D. Phillips.

### Hancock.   Opinion November 2, 1910.

*Constitutional Law.   Distribution of Governmental Powers.   Use of Highways. Police Power of the State.   Class Legislation.   Automobiles.   Constitution of United States, XIV Amendment.   Constitution of Maine, Article I, section 1; Article III, section 2.   Private and Special Laws, 1909, chapter 133.*

Under the Constitution of Maine, Article III, section 2, declaring that no person belonging to one of the three co-ordinate departments of government shall exercise any of the powers belonging to either of the others, it is the duty of one department to presume that another has acted within its legitimate province until the contrary is made to appear by strong and convincing reasons, and courts are not justified in preventing the enforcement of a statute by declaring it invalid unless satisfied beyond a reasonable doubt that it is in clear violation of the Constitution.

The right to use the public highways is not an absolute unqualified right, but is subject to limitation and control by the legislature whenever necessary to

promote the safety and general welfare of the people.  Article I, section 1, of the Constitution of Maine, specifying certain natural and unalienable rights of man, is not violated by such an exercise of the State's police power.

The exercise of the State's police power to limit and control the use of highways as by excluding automobiles from some of them, is not a violation of the fourteenth amendment to the United States Constitution, forbidding any State to deny to any person the equal protection of the laws.

A statute is not class legislation simply because it affects one class and not another, where it affects all members of the same class alike, and the classification involved in the law is founded upon a reasonable basis.

The legislature by passing an act prohibiting the use of automobiles in such of the four towns on the island of Mt. Desert as should accept the act, having determined that it was reasonable and expedient, its judgment must be deemed conclusive, and the court cannot say that the act had no tendency to promote the safety, health, and welfare of the people; and hence that it was not enacted in the exercise of the State's police power.

On agreed statement of facts.    Judgment for the State.

The defendant was arrested on ·a warrant duly issued by the Bar Harbor Municipal Court for an alleged violation of a special act of the Legislature approved March 12, 1909, entitled "An Act to prohibit the use of automobiles in the towns of Eden, Mount Desert, Tremont and Southwest Harbor, on the island of Mount Desert." The defendant pleaded not guilty but on trial was found guilty and sentenced to pay a fine of $20 and costs and thereupon the defendant appealed to the Supreme Judicial Court.    An agreed statement of facts was filed in the appellate court and the case reported to the Law Court for determination.

The case is stated in the opinion.

*Wiley C. Conary*, County Attorney, for the State.

*Herbert L. Graham*, for defendant.

SITTING :   EMERY, C. J., WHITEHOUSE, PEABODY, CORNISH, KING, BIRD, JJ.

WHITEHOUSE, J.    This is a criminal prosecution for an alleged violation of a special act of the Legislature approved March 12, 1909, entitled "An Act to prohibit the use of automobiles in the towns of Eden, Mount Desert, Tremont and Southwest Harbor on

the Island of Mount Desert." The respondent was found guilty by the Municipal Court of Bar Harbor and appealed to the Supreme Judicial Court for Hancock County. The case comes to the Law Court on an agreed statement of facts.

Section one of the special act in question, declares that "no automobile or motor vehicle shall be set up, used, driven or operated in or on any highway, townway or public street within any of the towns of Eden, Mount Desert, Tremont and Southwest Harbor, on the Island of Mount Desert, in the County of Hancock, State of Maine."

Section two prescribes the penalties for violation of the act and Section four is as follows: "In such of the said towns as shall accept this act at any legal meeting called by a warrant containing an article for that purpose, this act shall, subject to the provisions of the constitution thereto applicable, take effect ten days after it shall be so accepted."

This act was duly accepted by the towns of Eden, Mount Desert and Tremont at legal meetings called for that purpose, but was rejected by the town of Southwest Harbor, on the 16th day of July, 1909.

It appears from the agreed statement of facts that the respondent, a resident and taxpayer of the town of Southwest Harbor which had rejected the act of the Legislature, left his home on the first day of October, 1909, in his automobile, propelled by its own power, and travelling by the only road possible from his home in Southwest Harbor to the city of Ellsworth, was obliged to pass through certain portions of the towns of Mount Desert and Eden, two of the towns accepting the act.

It also appears from the agreed statement that "the town of Southwest Harbor is so situated that closing the roads of Mount Desert and Eden to the use of automobiles and motor vehicles, makes it impossible for the owners thereof, resident of Southwest Harbor, to leave that town, and the Island of Mount Desert by the town and county roads, without passing through some portions of the towns of Mount Desert and Eden. The agreed statement concludes with the following stipulation:

"If the court is of opinion (1) that the act of the Legislature granting authority to the towns of Eden, Mount Desert and Tremont totally to prohibit the use of automobiles and motor vehicles within the limits of said towns is not in violation of the State and United States constitutions, (2) and by so prohibiting them to deprive the residents of Southwest Harbor, the town rejecting said special act, of free ingress and egress to and from said town over the public highways, is not in violation of the State and United States constitutions, upon the above statement of facts and papers in the case, then judgment is to be rendered for the State, otherwise for the respondent."

It is not in controversy that in the exercise of that police power which pertains to every sovereign state, the Legislature may regulate the manner in which automobiles shall be operated on the highways, and may absolutely prohibit their use upon certain specified highways and streets. But it is contended that the special legislation in the case at bar is unconstitutional, first, because it totally prohibits the use of automobiles on any and all of the highways, townways and public streets within the limits of the towns of Eden, Mount Desert and Tremont, and second, because as a result of the acceptance of the act in the three towns named, and its rejection by the town of Southwest Harbor, the residents of that town are deprived of the right of ingress and egress over the county roads to and from their homes in vehicles recognized as legitimate means of conveyance on the public highway. It is argued that this statute makes a distinction between the towns here in question and other towns throughout the State, which is arbitrary and unreasonable and not necessary for the promotion or preservation of the public health, safety or welfare. It is accordingly contended that it cannot be justified or sustained as an exercise of the police power of the State and that the decision of the Legislature upon this question is not final and conclusive, but is a legitimate subject of inquiry by the court when the constitutionality of the act is assailed. The constitutional provisions invoked by the respondent, in contravention of which the statute is alleged to have been enacted, are section one of the "Declaration of Rights" in Article one of the Constitution of

this State, and section one of the Fourteenth Amendment of the Federal Constitution, declaring that "No state shall . . . . deny to any person within its jurisdiction the equal protection of its laws."

It is a fundamental rule respecting the distribution of the powers of government into three departments that "no person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others." Const. of Maine, Art. III, sec. 2. But courts are not justified in preventing the enforcement of a legislative enactment by declaring it invalid unless satisfied beyond a reasonable doubt that it is in clear violation of some provision of the Constitution. It is the duty of one department to presume that another has acted within its legitimate province until the contrary is made to appear by strong and convincing reasons. *State* v. *Rogers*, 95 Maine, 98 ; *State* v. *Lubec*, 93 Maine, 421 ; *Soper* v. *Lawrence*, 98 Maine, 280. "It is but a decent respect" said the court in *Ogden* v. *Saunders*, 12 Wheat. 270, "due to the wisdom, the integrity and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity, until its violation is proved beyond all reasonable doubt.

In determining the constitutionality of the statute in the case at bar, it is important to enter upon the inquiry with a correct understanding of the relations between the State and the municipalities and the authority of the Legislature respecting the establishment and control of highways.

In Dillon's Mun. Corp. (2 ed.) sec. 653, the author says: "Public streets, squares, and commons, unless there be some special restriction when the same are dedicated or acquired, are for the public use, and the use is none the less for the public at large as distinguished from the municipality because they are situate within the limits of the latter, and because the Legislature may have given the supervision, control and regulation of them to the local authorities. The Legislature of the state represents the public at large, and has, in the absence of special constitutional restraint and subject (according to the weight of more recent judicial opinion) to the property rights and easements of the abutting owner, full para-

mount authority over all public ways and public places." This was cited with approval in *Scovel* v. *City of Detroit*, 146 Mich. 93, (109 N. W. Rep. 20), in which it was held competent for the Legislature to confer upon a Park Commissioner, authority to set aside a portion of a boulevard as a speedway. So in *The People Ex Rel. Bristol* v. *The Board of Supervisors of Ingham Co.*, 20 Mich. 95, the court said : "The Legislative power is everywhere recognized as the proper guardian of all such public rights, as the right of travel upon the highways, and as having as the proper representative of the public, full power over the whole subject of laying out, opening, altering and discontinuing highways. And this power they may, so far as they have not been restrained by the Constitution, exercise *directly* without delegating it to any other tribunal."

In accordance with this view, in the early case of *Wales* v. *Stetson*, 2 Mass. 143, the court observed : "We are not prepared to deny a right in the General Court to discontinue by statute, a public highway. It is an easement common to all the citizens who are represented in the Legislature. The authorization of the erection of bridges over navigable waters is in fact an exercise of a similar right." So in *Eudora* v. *Darling*, 54 Kan. 654, (39 Pac. 184), it was held that the Legislature, as the representative of the public, had full constitutional power to vacate certain streets and alleys laid out and established and opened for public travel. See also *State* v. *Yopp*, 97 N. C. 477 (2 S. E. 458), and *Twilley* v. *Perkins*, 77 Md. 252, (26 Atl. 286). In *Commonwealth* v. *Abrahams*, 156 Mass. 57, it was held that a statute authorizing park commissioners to "govern and regulate" any park laid out by them under the statute was constitutional and that whether any park can be temporarily set aside for the use of any portion of the public is for the park commissioners to decide, in the exercise of their discretion.

In our own State this court speaking of the appointment and equipment of highway surveyors by the town in *Goddard* v. *Harpswell*, 84 Maine, 499, said : "But the town does all this as a public duty, not for its own peculiar gain. It has no proprietorship in the roads and bridges built and maintained by taxes upon

its inhabitants. The roads and bridges belong to the public." And again in *State* v. *Boardman*, 93 Maine, 73, in which the validity of an ordinance excluding heavily loaded vehicles from certain streets was brought in question, the court observed that "Such ways cannot be considered in any sense the easement or property of the town ; but the municipality in which a public way is located has been vested by the Legislature with supervision and control of such ways for public use."

In harmony with these fundamental principles, it is now a well settled rule that in the absence of any constitutional restriction or limitation, the legislature of a sovereign State, in the exercise of its police power which extends to the preservation of the "lives, limbs, health, comfort and quiet of all persons and the protection of all property within the State" has the right to prohibit automobiles from passing over certain streets or public ways in any city or town. *Commonwealth* v. *Kingsbury*, 199 Mass. 542. In accordance with the doctrine of this case and with the uniform current of authority upon the subject, it was held by this court in the recent case of *State* v. *Mayo*, 106 Maine, 62, that a "private and special" act of the Legislature authorizing the town of Eden (one of the towns embraced in the act now before the court) at any legal meeting of the voters thereof to close to the use of automobiles certain streets in that town, was not repugnant to any constitutional provision and that the ordinance adopted by the vote of the town in pursuance of this enactment excluding automobiles from such streets was a legal and valid one. In that case as in this, it was contended in behalf of the defendant that the statute was in violation of the "natural, inherent and unalienable rights" of man specified in Sec. 1, of Art. 1, of the Constitution of Maine and Article XIV of the Amendments to the Constitution of the United States, declaring that no State shall deny to any person "the equal protection of the laws." But it was determined by this court in a carefully considered opinion, and in accordance with the firmly established principle above stated, that the right to use the public streets is not an absolute and unqualified right, but is subject to limitation and control by the Legislature "whenever necessary to

provide for and promote the safety, peace, health, morals and general welfare of the people," and that "no constitutional guaranty is violated by such an exercise of the police power of the state." The Fourteenth Amendment was not designed to impair the police powers of a State and has never been so construed. *Commonwealth* v. *Abrahams*, 156 Mass. 60.

But it is insisted in behalf of the defendant that the statute in question makes an arbitrary classification with respect to the subjects over which it operates, because it distinguishes between the methods of travel upon the public highways of the several towns where no necessity for such discrimination is shown by the evidence in the case. This objection is satisfactorily answered by the Supreme Court of the United States in *Barbier* v. *Connolly*, 113 U. S. 27, in which the court said speaking of the Fourteenth Amendment: "But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity. From the very necessities of society, legislation of a special character, having those objects in view, must often be had in certain districts. . . . Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation, which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

So in *Christy* v. *Elliott*, 216 Ill. 31, (74 N. E. 1035) the court said : "Such laws as the act in question have never been regarded as class legislation simply because they affect one class and not another inasmuch as they affect all members of the same class alike, and the classification involved in the law is founded upon a reasonable basis. If these laws be otherwise unobjectionable all that can

be required in these cases is that they be general in their application to the class or locality to which they apply, and they are then public in character, and of their propriety and policy the Legislature must judge." See also Cooley's Const. Lim., 6 edition, pages 479-481, and *State* v. *Swagerty*, 203 Mo. 517; *Leavett* v. *Railway Co.*, 90 Maine, 153; *State* v. *Leavett*, 105 Maine, 76, and *Opinion of the Justices*, 103 Maine, 506.

In *State* v. *Mayo*, the defendant's further contention that the ordinance in that case, was unreasonable and unnecessary for the public safety and welfare and that the court had authority to review the decision of the Legislature upon that question, was carefully examined and fully considered upon reason and authority, and it was there determined that if the power granted to a municipality is a general one, the ordinance passed in pursuance of it must be found to be a reasonable exercise of the power, but that when the Legislature has constitutional authority to enact a law and thereupon does specifically and directly authorize and prescribe that which is done by the municipality, the Legislature thereby determines that the law is reasonable and will promote the public welfare. Its judgment was accordingly held conclusive. See also *Lunt's Case*, 6 Maine, 414; *Moore* v. *Veazie*, 32 Maine, 360; *Jones* v. *Sanford*, 66 Maine, 589; and *Jacobson* v. *Massachusetts*, 197 U. S., page 11. In the last named case the court said: "Upon what principles as to the relations existing between the different departments of government can the court review this action of the Legislature? If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the Legislature has done comes within the rule that if a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights, secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Mugler* v. *Kansas*, 123 U. S. 623, 661; *Minnesota* v. *Barber*, 136 U. S. 313, 320; *Atkin* v. *Kansas*, 191 U. S. 207, 223.

With respect to· the conditions actually existing in the town of Eden in which the streets in question in that case were located, the court said : "In certain sections in our state, such for example as Mount Desert Island and the vicinity of Bar Harbor, public highways have been constructed along precipitous mountain sides, through circuitous defiles, over deep ravines, and on the very edges of ocean cliffs. They have been so made to afford access to some of Maine's famous and picturesque scenery. The use on such ways of the powerful, swiftly moving and dangerous automobile must necessarily endanger all who travel thereon, and especially those who ride in carriages drawn by horses. Presumably to safeguard the people against such dangerous conditions the Legislature decided that the ordinance in question might be made. It seems reasonable and expedient ; but as to that the judgment of the Legislature is conclusive."

In enacting the law in question in the case at bar, the Legislature must be presumed to have had under consideration not only the facts above stated, but all the necessary and pertinent information respecting the four towns to be affected by the act, such as the character and extent of the population and the location and condition of all the highways and streets. It may be presumed to have taken note of the fact that these four towns comprise the entire area of the island of Mount Desert, which contains thirteen mountains and thirteen lakes, and that this "bright mosaic of island and bay" has ever been celebrated for the surpassing beauty and grandeur of its picturesque scenery. It could not forget that for more than a quarter of a century it has been famous as one of the most attractive and healthful summer resorts on the Atlantic coast, and that its numerous summer residents, fatigued and depressed by their activities and cares in the crowded cities, annually seek peaceful seclusion and rest at this island resort where the air is invigorating and their repose undisturbed. It is presumed to have considered that ponderous and rapidly moving automobiles not only endanger all who travel in the highways and streets with horses, teams and carriages, but increase the expense of maintaining in a

condition of safety and convenience the highways frequented by the permanent residents of these towns.

These and similar reasons appear to have been sufficient to induce the legal voters in three of the towns, containing about nine-tenths of the population of the island to vote for the acceptance of the act in question, Southwest Harbor alone with about one-tenth of the population voting to reject it. These reasons also emphatically negative the suggestion that the act was not passed to promote the safety, health, peace and quiet and general welfare of the people, and tend to show that it was not a manifest invasion of their constitutional rights.

Finally it is contended that inasmuch as it is impossible under this act for a resident of Southwest Harbor to leave that town and the island of Mount Desert without passing through a portion of the towns of Eden and Mount Desert, the act must be deemed oppressive and unreasonable; and since the provisions of the act relating to the four towns are inseparable, the act must be construed as an entirety and the whole declared unconstitutional.

It is provided in section four of the act that "in such towns as shall accept this act . . . . it shall take effect ten days after it shall have been so accepted." It thus appears that the Legislature anticipated the contingency that the act might possibly be rejected by one or more of the towns, but did not consider that it would be an unjust discrimination against the owners of automobiles in such towns, since they would still enjoy the same right possessed by the residents of the town accepting the act to travel by every other legitimate means of conveyance over the public highways of all the towns. Doubtless the further fact was also taken into consideration that the island of Mount Desert is surrounded by navigable waters over which there is a public right of travel, and that Southwest Harbor, as well as several other harbors on its shores, is on a line of public steamboats running to Bangor and prominent points on the coast of Maine.

It has been seen that the act in question directly prohibited the use of automobiles on the highways and streets of the four towns named, and left nothing to the discretion of the people but the

question of its acceptance.   The court would not be warranted in declaring that the act manifestly has no tendency to promote the safety, health and welfare of the people, and hence that it was not enacted in the exercise of the police power of the State.   The Legislature has determined that it was reasonable and expedient and its judgment must be deemed conclusive.   It cannot be reviewed by this court.

The legislation in question does not appear to be in violation of any provision in the Constitution either of this State or of the United States and the certificate must therefore be,

*Judgment for the State.*