TOWN OF ATLANTIC BEACH, *et al.,* v. OTTO J. OOSTERHOUDT, *et al.*

172 So. 687.
Division A.
Opinion Filed February 17, 1937.
Rehearing Denied March 4, 1937.

*Milam, McIlvaine & Milam* and *Harvey Mabry,* for Appellants.

*Truett & Shea,* for Appellees.

TERRELL, J.—The Town of Atlantic Beach, by ordinance, created a protected zone between the upland and low water mark along the beach and prohibited its use with wagon, omnibus, automobile, or other motor-propelled vehicle, from three to seven P. M. on each week day, but the ordinance imposed no restrictions whatever for its use on Sundays.

The appellee, Otto J. Oosterhoudt, filed his bill of complaint against the Town, the Town Marshal, the Town

Council, and the Mayor, praying that they be restrained from enforcing said ordinance on the theory that the beach was a public highway and that the town was without authority to restrict its use by motorists.

W. H. Adams petitioned to intervene in the Oosterhoudt suit on the theory that he owned a large hotel at Atlantic Beach facing the ocean and within the protected zone, that his patrons were accustomed to use the beach as an approach to the hotel, and that he was peculiarly damaged by the restriction forbidding its use for automobile traffic. The prayer of his petition was granted and it was ordered treated in like manner as the original bill of complaint.

John E. Mathews also petitioned to intervene in the Oosterhoudt suit as a private citizen on the theory that the beach had for a long time been extensively used by motorists, that Duval County had spent $2,000,000.00 in building roads to the beach and had expended other large sums for ramps, down which automobile travel entered upon the beach, that in 1925 the beach was declared to be a public highway under the jurisdiction of the County Commissioners, that the county had spent large sums in keeping the beach clear of debris and wrecks, that the City of Jacksonville had advertised the beach and its attractiveness for automobile travel and recreation, that the charter of the Town of Atlantic Beach giving it the right to regulate the beach did not authorize the restriction of automobile traffic thereon, that he had long been in the habit of using the beach for that purpose, but that on July 11 he was riding over the beach in violation of the ordinance in question and was arrested. His petition was permitted to take the same course as that filed by W. H. Adams.

To the bill of complaint and petitions to intervene, the Town of Atlantic Beach answered, alleging that the ordi-

nance was adopted as a public measure after due consideration and pursuant to its authority to protect the general welfare of its citizens, to own and regulate public grounds, to control and abolish streets and highways, to regulate bathing, and to exercise all powers necessary for the health, convenience, morals, and safety of its citizens.

The answer also alleged that the beach from high to low water mark had been declared to be a public highway over which the town was given jurisdiction and control and the power to regulate its use, that there were highways running north and south parallel to the beach and immediately behind it that were available and ample to adequately serve the public while the beach or protected zone was closed, to-wit: Beach Avenue, immediately behind the beach front blocks, Ocean Avenue, one block west thereof, and East Coast Drive, one block further west, besides other secondary roads which fully and adequately served the public, that the protected zone is located between two ramps and to detour around it is very convenient for automobiles to drive up one ramp, travel thence along the west side of the protected zone on a good highway to the other ramp and approach the beach over it.

It is further alleged that in the enforcement of the ordinance ropes supported by poles were stretched across the beach at either end of the protected zone, signs were maintained thereon, and deputy marshals stationed there to notify the people; it is further shown that the beach or protected zone is wide and ideally adapted to the speeding of automobiles, and that for many years the safety of bathers had been endangered by speeding automobiles, many having been injured and some killed, that the Town could not control speeding, but could create a protected zone on the beach and maintain it within certain hours, that the fear

of danger to bathers and pedestrians has seriously affected the patronage of the beach, and that the regulation so imposed was for the benefit of all those who live near to or remote from the beach and frequent it for bathing and recreation.

The answer to Oosterhoudt's bill was made applicable to the Adams and Mathews interventions. A motion to dismiss was incorporated in the answer. The case was then argued on application for temporary injunction which was granted. Whereupon plaintiff and the intervenors moved for final decree on bill and answer which motion was granted. The bill was accordingly dismissed and the ordinance adjudicated to be illegal, invalid, and unenforceable, and the Town was permanently enjoined from enforcing it. From said decree the cause is here on appeal.

Appellants argue five questions, but crystalized they may be resolved into the single question of whether or not the Town of Atlantic Beach was empowered to enact the ordinance complained of and if so was such power reasonably exercised.

In June, 1925, the Legislature enacted Chapter 10486, Laws of Florida, declaring that portion of the Beach along the Atlantic Ocean within the confines of Duval County to be a public highway, subject to the paramount right of the public to use it for bathing and recreation, and as such placing the supervision and control thereof in the Board of County Commissioners.

In December, 1925, the Legislature enacted Chapter 11400, Laws of Florida, relating to the Town of Atlantic Beach, Section Thirteen being as follows:

"The Ocean Beach, from low water mark to the bulkhead line, and between the north and south limits of said town, is hereby declared to be a public highway and the

said town is hereby given such jurisdiction and control over the ocean beach as though it was a public street in said town."

In 1929, the Legislature enacted Chapter 13907, Laws of Florida, extending the boundaries of the Town of Atlantic Beach to low water mark, empowering said town to hold property for parks and promenades, to improve and regulate the same, to regulate bathing in the waters of the town, and to pass all ordinances necessary for the health, morals, convenience, and safety of its citizens. Section Thirty-five of the latter Act is as follows:

"The Town Council shall have full and complete jurisdiction, charge, and control, over all public or dedicated roads, ways, avenues, streets, and alleys in the limits of said Town, and shall have the power to cause obstructions to be removed therefrom and to restrain and regulate the use and occupation of same by any person or corporation whatsoever, to the end that safety, comfort, and welfare of the public may be secured and preserved. The Ocean Beach from low water mark to the bulkhead line and between the north and south limits of said town is hereby declared to be a public highway and the town is hereby given jurisdiction and control over the same."

Having declared the beach to be a public highway and the town given jurisdiction over it the same as though it was a public street with power to restrain and regulate its use in the interest, safety, comfort, and welfare of the public certainly contemplates the regulation of traffic and the right within reasonable limits to forbid any kind of dangerous traffic during any or all hours of the day.

Having thus reached the conclusion that the town was authorized to enact the ordinance assaulted, we are next

confronted with the question of whether or not the manner of its exercise was reasonable and just.

Appellees conceive the question to be whether or not the Town of Atlàntic Beach has power to prohibit the use of the beach within its corporate limits to vehicular traffic and rely on State v. Black River Phosphate Co., 32 Fla. 82, 13 So. 640, and like cases to support its contention. These cases treat the power of the State to abrogate its trust with respect to the foreshore and are not in point here because none of the acts involved attempt to do that. The paramount trust of the State in the foreshore is recognized and reserved in all these Acts.

It is well settled that the power to restrain and regulate may extend to and include a reasonable prohibition. In this case the prohibition affected about one mile of beach within the corporate limits of the town, it was effective only on week days from three to seven P. M. during the summer bathing and vacation season, did not apply to Sunday, and during the closed period of four hours other avenues and streets were open and were ample to detour traffic around the protected zone. There were many miles of open beach extending north and south adjacent to the protected zone that could be used for driving and speeding, in fàct, the protected zone was for the purpose of giving bathers and recreationists free access to a short sector of the beach where they could indulge in the luxury of a sun bath or a surf bath without the hazard of being maimed or killed by reckless drivers, most of whom substitute sweat or some other aroma-producing concoction for the ablution.

The Florida beaches have a peculiar attraction to vacationist and recreation seekers both domestic and foreign. Atlantic Beach, unlike most others, also has a peculiar value as a speedway. It is common knowledge that thousands of

men, women, and children frequent it summer and winter. The writer of this opinion has been on every beach of more than local note from Key West to Nova Scotia, from Puget Sound to Santa Cruz, and on the Gulf of Mexico, but none of them have the charm, the beauty, and the attractiveness of the Florida beaches, nor are they so valuable as health giving and recreational centers. Many of our beaches are closed exclusively to traffic except that propelled by hand power.

The power of both the Legislature and municipalities in the exercise of their police power to regulate traffic in the interest of the life, limbs, health, comfort, and quiet of the people has generally been recognized and upheld even when so drastic that it extended to the exclusion of traffic by automobile from certain streets and highways. State v. Phillips, 107 Me. 249, 78 Atl. 283; Commonwealth v. Kingsbury, 199 Mass. 542, 85 N. E. 848; State v. Mayo, 106 Me. 62, 75 Atl. 295; Garneau v. Eggers, 113 N. J. L. 245, 174 Atl. 250; People, *ex rel.* Cavanaugh, v. Waldo, 72 Miscl. 416, 131 N. Y. Supp. 307; People v. Rosenheimer, 209 N. Y. 115, 102 N. E. 530; State, *ex rel.* Pennington, v. Quigg, 94 Fla. 1056, 114 So. 859; Noel v. Griffin, 100 Fla. 152, 129 So. 511; *In re:* Berry, 147 Cal. 523, 82 Pac. 44; Encyclopedia of Automobile Law, 9th Ed., Vol. 1-2, Section 130.

These cases all proceed on the theory that the automobile is a dangerous instrumentality and that its use may be regulated even to exclusion in the interest of the public. This Court in Sallas v. State, 98 Fla. 464, 124 So. 27, recognized the right of pedestrians on the very beach involved in this case and held it to be equal if not superior to that of the motorist.

This case is unlike any of the cases here cited in that it involves a beach unusually adapted to bathing, recreation,

and as a speedway for motorists. No other beach possesses the latter quality to such a remarkable degree. It is in a class with the salt flats of Bonneville and is known the world over as a speedway. We have, therefore, a conflict between these two interests, which should be reconciled as fairly to both as is possible to do.

If the pedestrian has a right on Atlantic Beach "equal to, if not superior to, that of the motorist," as we said, with miles and miles and miles of beach to motor on north and south and adjacent to the protected zone, it certainly cannot be unreasonable to close one short sector (about one mile) four hours in the afternoon and require the motorists to detour around it on good and ample highways while the pedestrian gets his bath and takes his siesta in the sand unmolested by the reflection that if he doesn't look both ways with both eyes at the same time and dodge while he looks, he may be stricken down and carried off the beach feet first.

From this view it follows that the judgment below must be and is hereby reversed.

Reversed.

WHITFIELD and BROWN, J. J., concur.

ELLIS, C. J., and DAVIS, J., dissent.

BUFORD, J., not participating on account of illness.

DAVIS, J. (dissenting).—As recently as January 12, 1937, this Court has decided that municipalities have no implied power to enact ordinances that involve the exercising of extraordinary and unusual powers that should not be exercised absent some clear evidence of delegation of such special powers by express Act of the Legislature. See: City of Pensacola v. Lawrence, 126 Fla. 830, 171 So. Rep. 793.

The ordinance attacked in this case is unusual and extraordinary in that it is predicated upon the claim of an

implied power on the part of any municipality acting under general municipal powers alone, to close up entirely, as against general public use and enjoyment, an entire mile of ocean front beach, on the assumption that any municipality has a general power so to do when its local officers so decide. The ordinance is not one channelizing automobile traffic on the beach as a safety measure. Nor does it have any operation at all during the very days and hours it would best protect bathers, if that were its sole object.

The people of the State of Florida at large, and not an exclusive class of beach front property owners, are entitled to the beneficial enjoyment of the ocean beaches of this State. The people of the State at large have rights therein that should not be denied to them by purely local municipal action, absent the voice of the people of Florida, expressed in some specific legislative Act, conferring specific power upon local authorities to appropriate as an exclusive right, a part of the common use of our ocean beaches by the people of the State in general.

I consider the ordinance wholly unauthorized by any competent legislation. Therefore, I think the Circuit Court was correct in its decree protecting the rights of the people in that which is their common law heritage, the right to ride and travel upon the beaches as a public highway.