McCORD, Judge.
This is an appeal from an amended final judgment enjoining appellants, the Board of County Commissioners of Marion County, Florida, from obstructing as against ap-pellees, their invitees, successors or assigns a certain road in K P Subdivision in Marion County and granting appellees, their invitees, successors or assigns free and unobstructed access to Rainbow River over said right of way without payment of any fee therefor.
As shown by the amended final judgment, K P Subdivision consists of lots in *46 Block A thereof abutting Rainbow River and lots in Block B which do not front on the river. The plat of the subdivision contains a 40 foot road right of way known as Wekiva Road which runs from a public road paralleling the river (Railroad Street) to the edge of the river on its west side. The platted Wekiva Road is approximately 500 feet in length. In 1953, appellants purchased Lots 11, 12 and 13 of Block A and constructed a public recreation park thereon. Prior to April 21, 1959, appellants constructed a caretaker’s, house which encroached upon the right-of-way of Wekiva Road and constructed outbuildings and drove a well in the right-of-way. Upon complaint by the developer of the subdivision, appellant on April 21,1959, designated the north 20 feet of the west 400 feet of Lot 11 of Block A and the north 20 feet of the remainder of Lot 11 as a public road and shortly after April 21, 1959, paved it and constructed a launching ramp at the edge of the river. Appellants then maintained it as a public road until June 14, 1974. On that date, appellants barricaded the road at its intersection with Railroad Street and on July 16,1974, passed a resolution rescinding its resolution of April 21,1959, which established it as a public road. On the same day, appellants passed a resolution after due notice closing and vacating the platted street known as Wekiva Road. This road is the only public access to the river for the entire distance of five miles from Rainbow Springs at the headwaters to its confluence with the Withlacoochee River in the City of Dunellon.
The trial court found from the evidence that appellees Jean F. Bravo and Raleigh J. Bravo owned seven lots and a portion of another in Block B of the subdivision on which they have their home and trailer park consisting of 21 rental trailer spaces and that their property has substantially decreased in value as a result of the closing of the road located on the northerly portion of Lot 11. The trial court further found that appellees Raymond Biederman and Dorothy Biederman own a lot in Block B of the subdivision on which their home is located and that their property has substantially decreased in value because of the closing of the road. In addition the trial court found that Jacob R. Bohannon and May R. Bohannon own a lot in Block B of the subdivision on which their home is located and that their property has substantially decreased in value because of the closing of the road.
The trial court further found that subsequent to the closing, appellants continued to provide access to Rainbow River to the general public during the hours of. 8 a.m. to 8 p.m. upon the payment of an admission fee of $.25 per person and $1 per boat; that appellees are denied access between the hours of 8 p.m. and 8 a.m. which they had prior to the barricading of the road. The limited access afforded by appellants is through the main gate of their recreation park.
Appellees contended below and contend here that they purchased their nonwater-front lots in the subdivision relying upon access to Rainbow River through the designated public road. The Bravos operate a trailer park and their revenue therefrom depends upon access to Rainbow River. The limitation of access imposed by appellants has effectively prevented their customers from launching their boats in the early morning hours for bass fishing and during the night hours for catfish fishing. The cutting off of their access to the river has damaged their business and reduced the value of their property.
Appellants contend that the closing of the road and limiting of access to the river through their park was within the scope of its plenary and home rule and police powers and that the rights of, and the injury to, the appellee landowners differed only in degree, but not in kind, from all other “back lot” owners along the west side of the Rainbow River. (But the proper question is whether or not the injury to appel-lees is different only in degree and not in kind from that sustained by the community at large.) Appellants presented testimony of problems which have developed on the river which they contend required the exercise of their regulatory power in closing the *47 road and limiting access to the river through their recreation park. This evidence showed that floating or tubing parties have become more and more popular on the river; that large groups of young people enter the river at the recreation park and float down it on innertubes or other flotation rafts or devices, many of whom carry alcoholic beverages; that wild night drinking parties are carried on resulting in many complaints about rowdiness and drinking.
We are not concerned here with the validity of any regulations which appellants have adopted or may adopt restricting and controlling the use of the river itself. This suit only involves the closing of the public road in question to appellees, their invitees, successors and assigns.
Appellants rely upon Town of Atlantic Beach v. Oosterhoudt, 127 Fla. 159, 172 So. 687 (1937). There the legislature, by statute, had made the ocean beach a public highway in the Town of Atlantic Beach and the Town had, by ordinance, prohibited the use of the beach “with wagon, omnibus, automobile, or other motor propelled vehicle, from 3 to 7 p.m. on each weekday.” The legislature, in the act making the beach a public highway, gave the town council jurisdiction and control over it as though it was a public street in the town. In a later statute, the town council was given full and complete jurisdiction and control over all public or dedicated roads and streets in the town with authority to restrain and regulate their use and occupation to the end that the safety, comfort, and welfare of the public may be secured and preserved. Oos-terhoudt brought suit to restrain enforcement of the ordinance on the theory that the beach was a public highway and the town was without authority to restrict its use by motorists. An intervenor contended that he owned a large hotel facing the ocean at the beach within the protected zone and that his patrons were accustomed to using the beach as an approach to the hotel and that he was peculiarly damaged by the restriction forbidding its use for automobile traffic. The Supreme Court in its opinion pointed out that ordinances of municipalities, in the exercise of their police power to regulate traffic in the interest of life, limbs, health, comfort and quiet of the people, have generally been upheld even when so drastic that they extended to the exclusion of traffic by automobile from certain streets and highways. The court went on to say:
“If the pedestrian has a right on Atlantic Beach ‘equal to, if not superior to, that of the motorist,’ as we said, with miles and miles and miles of beach to motor on north and south and adjacent to the protected zone, it certainly cannot be unreasonable to close one short sector (about one mile) four hours in the afternoon and require the motorists to detour around it on good and ample highways while the pedestrian gets his bath and takes his siesta in the sand unmolested by the reflection that if he does not look both ways with both eyes at the same time and dodge while he looks, he may be stricken down and carried off the beach feet first.”
Unlike Town of Atlantic Beach, the problems of appellants are problems from activities on the river rather than on the road. If the problems were on the road, Town of Atlantic Beach would be applicable. Appellants closing the road shuts off appellees’ access to the river without disturbing the use of the river by persons who own property on the river. Thus, rather than bar all persons from the use of the river during the hours in which the access road has been closed, appellants’ action only bars appellees and others whose only means of access to the river is over the road.
As to appellant’s contention that the injury to appellees differs only in degree, but not in kind, from others who are also denied use of the road, the evidence is to the contrary. In Brooks-Garrison Hotel Corp. v. Sara Inv. Co., 61 So.2d 913 (Fla.1952), the Supreme Court held that a suit by an individual to enforce a private right- to use a public street must be based on a special and particular injury differing in kind as well as degree from that sustained by the commu *48 nity at large. There, the Supreme Court said:
“ . . . Under this rule, the grantee’s private right of user extends only to those streets and alleys shown on the plat as are reasonably or materially beneficial to the grantee and of which the deprivation would reduce the value of his lot.”
In the case sub judice the evidence shows, and the trial judge found, that the closing of the street reduced the value of appellees’ lots.
Affirmed.
BOYER, C. J., and GREEN, R. A., Jr., Associate Judge, concur.