400 So.2d 507 (1981)
Bert H. COLLOM, As Personal Representative of the Estate of April Collom, Deceased, and the Estate of Judith Collom, Deceased, the Guardian of Shelley H. Collom, and for Himself Individually, Appellant,
v.
CITY OF ST. PETERSBURG, Florida, a Municipal Corporation and a Subdivision of the State of Florida, Appellee.
No. 80-997.
District Court of Appeal of Florida, Second District.
June 3, 1981.
Rehearing Denied July 8, 1981.
*508 Donald Wm. Giffin of Donald Wm. Giffin, P.A., St. Petersburg, for appellant.
Michael S. Davis, Chief Asst. City Atty., St. Petersburg, for appellee.
OTT, Judge.
Before Florida expressly waived sovereign immunity by the enactment of section 768.28, Florida Statutes (1973), liability of governmental units was dependent upon whether a challenged activity was "governmental" or "proprietary." Naturally, claimants were prone to see everything as proprietary and, conversely, to the governments there was very little, if anything, that wasn't governmental.
After the doctrine of sovereign immunity was abolished, the Florida Supreme Court pointed out that certain functions of government still do not give rise to liability  not because of immunity, but because some functions are discretionary, and therefore cannot be tortious because no duty to act has been breached. Commercial Carrier Corp. v. Indian River County and Cheney v. Dade County, 371 So.2d 1010, 1020[8], 1022[9]. The court distinguished between functions which may give rise to liability and those which do not: the former are "operational" and the latter are "planning."
Everything has changed, yet nothing has changed. Claimants now tend to paint everything "operational," but the governments say it is almost all "planning." And as always, the courts must draw the lines. In this case the trial court was persuaded that the City of St. Petersburg was merely "planning" when it designed, installed and maintained an allegedly dangerous storm sewer system. Accordingly, the court entered summary judgment for the city in appellant's action for damages suffered when his wife and daughter were swept into the storm sewer and drowned. We reverse the summary judgment because it was predicated on an erroneous belief that the city was immune from suit.
There is no point in detailing here the allegations of what the city did or didn't do that rendered the sewer system dangerous. All those facts (and, for that matter, whether the system was in fact dangerous) must be determined by a trial. Suffice it to say here that the city's theory, that since there was no obligation to install any particular type of sewer system, it is "immune" from liability, no matter what it did, is a misconception of the law.
As we review the cases which come before us, it is all too obvious that many people still do not really understand that "sovereign immunity" simply no longer exists in this state. A government is liable for its negligent acts and omissions without exception. As already noted, the so-called exception for "discretionary" acts is a misnomer. "Discretion to act" completely precludes any possibility that a duty to act will be breached. Historically, no one  whether an individual or a government  has ever been liable where true discretion has been exercised in deciding whether to act or which of two or more reasonable courses of action to follow. But immunity of a government for negligently performing an act no longer exists, even though the initial decision to act may have been purely discretionary, and not compelled in any way. In other words, and at the risk of being deemed repetitive, once a government decides to act, whether out of obligation of free choice, it must act responsibly and reasonably under the existing circumstances, and in accordance with acceptable standards of care and common sense.
When appellee was faced with a serious storm drainage problem, it may or may not have had discretion to refuse to do anything about it. That is not an issue here and we will not address it. We can assume that it did have discretion to determine whether or not it should get involved or take action. We can further assume that it had discretion *509 in the determination of just how to alleviate the problem  whether to go underground or stay above ground. Once those truly discretionary decisions were made, however, it could not negligently design, construct or maintain a facility with impunity. To illustrate, it might well be that the DOT would incur no liability in deciding to build a limited access road, but if it decides to do so it better not negligently design the roadway so as to cause the flooding of private property.
It is obvious that confusion has arisen from equating "plans" with "planning." Sometimes attempts to clarify tenuous concepts by putting labels on everything merely lead to further confusion. The operational/planning dichotomy may be a classic example. At any rate, appellee seems to sincerely believe that its conceded discretion in planning to alleviate the storm water problem, by installing an underground storm sewer system, extended right through to the actual drawing of the plans and specifications and even to the maintenance of the system, so that even though the finished project might be inherently dangerous the city could not be liable, because it "planned" the system that way. The fact of the matter is that a blueprint is not a plan in the sense of the "planning" that is discretionary, and once the "planning" has been done, the plans that are then prepared can indeed give rise to liability.
That confusion probably explains another misconception harbored by appellee, and we mention it only because it is such a disturbing notion. Appellee argues that many decisions are dictated by necessity, and that a lack of funds often necessitates "penny-pinching" in the design of municipal facilities. Therefore, argues appellee, some of the safety features in a sewer system, for example, might have to be eliminated solely because the city couldn't afford them.
The availability of funds may well be a valid consideration when a city is deciding just how to meet a threat to public safety. Certainly the government could not be expected to provide facilities for which the electorate refuses to loosen the purse strings. Properly, then, the solution selected by the city should be one it can complete. But this is not to say that the city would be free to adopt an expensive plan for alleviating a problem and then cut costs by eliminating the safety features. That would merely replace one danger with a worse one. No reasonable individual, for example, would install a fine furnace to keep his family from freezing, but economize by building a wooden chimney. Governments are expected to exercise similar prudence and reason.
Since this case must be returned to the court for a trial to determine whether appellee installed and maintained a sewer system which was in fact dangerous, and did in fact proximately cause or contribute to the deaths of appellant's wife and daughter, we must address one further contention made by appellee. It argues that the storm sewer into which the decedents were sucked was located in a drainage and utility right of way not intended for pedestrian traffic. Therefore, the argument goes, the city had no duty to maintain the area in a safe condition, and thus the summary judgment was proper for that reason. Reliance is placed upon our cryptic affirmance in Runowich v. City of St. Petersburg, 276 So.2d 83 (Fla.2d DCA 1973), which relied on Musetto v. City of Miami Beach, 82 So.2d 595 (Fla. 1955).
The cited cases involved injuries sustained in tripping over meter boxes or falling into holes in grassy areas provided for beautification  areas in which no reasonable person would "tramp with impunity." The facts of the present case hardly seem parallel, but of course we have no intention of supervising the trial court in its determination of whether the decedents were themselves guilty of negligence which caused or contributed to their deaths. But that is a question of fact, rarely capable of determination by summary judgment. Surely the trial court will permit appellee to amend its pleadings, if necessary, to set up all appropriate defenses, including contributory negligence.
*510 The summary judgment is REVERSED and the case is REMANDED to the trial court for further proceedings in accordance with this opinion.
GRIMES, Acting C.J., and CAMPBELL, J., concur.