412 So.2d 875 (1982)
Orla RALPH, Appellant,
v.
CITY OF DAYTONA BEACH, a Municipal Corporation, and Cheryl Ann Fetsko, Appellees.
No. 79-515.
District Court of Appeal of Florida, Fifth District.
March 10, 1982.
Rehearing Denied April 20, 1982.
*876 William H. Seitz of LaRue & Bernardini, P.A., Daytona Beach, for appellant.
Alfred A. Green, Jr., Daytona Beach, for appellee City.
No appearance for appellee Fetsko.
ORFINGER, Judge.
Appellant, as plaintiff below, appeals the dismissal with prejudice of her third amended complaint directed to appellee City of Daytona Beach. A final order of dismissal was entered by the trial court after appellant declined to further amend her pleading. The issue on appeal is whether the City is immune from suit on the basis of the facts alleged.
Plaintiff alleged that she was sunbathing on the Atlantic Ocean beach within the limits of defendant City and that while so engaged, she was run over by an automobile driven by the co-defendant, Cheryl Ann Fetsko,[1] suffering injuries as a result. In the count directed to the City, plaintiff contended that by virtue of a charter provision making the portion of the beach within the city limits a public highway and authorizing the City to regulate traffic thereon, the City had a duty to make the beach reasonably safe for sunbathers invited thereon in the same manner as would private persons owning a place of recreation and amusement; that the City thus had a duty to regulate or control vehicular traffic on the beach, to provide enough police officers or other attendants for that purpose, and to warn bathers of the dangers they faced from vehicular traffic; that the City failed to comply with its duty in that regard, did not regulate or control traffic on the beach, did not direct vehicular traffic away from areas where sunbathers were on the beach and thereby proximately caused the injury to plaintiff.[2]
*877 Appellant contends that the City is liable under section 768.28, Florida Statutes (1979), the Waiver of Sovereign Immunity Act, as interpreted by the Supreme Court in Commercial Carrier Corporation v. Indian River County, 371 So.2d 1010 (Fla. 1979), in that the acts of negligence complained of are operational level activities for which acts sovereign immunity has been waived under the statute. We disagree and affirm the judgment.
Commercial Carrier reminds us that certain activities of government have traditionally been exempt from tort liability, not because of sovereign immunity, but
"... upon a concept of separation of powers which will not permit the substitution of the decision of a judge or jury for the decision of a governmental body as to the reasonableness of planning activity conducted by that body. As articulated by Judge Fuld [in Weiss v. Fote, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63 (1960)]:
To accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts. Acceptance of this conclusion, far from effecting revival of the ancient shibboleth that `the king can do no wrong', serves only to give expression to the important and continuing need to preserve the pattern of distribution of governmental functions prescribed by constitution and statute."
Id. at 1018.
Although section 768.28 evinces the intent of the legislature to waive sovereign immunity on a broad basis, certain "discretionary" governmental functions remain immune from tort liability.
Legislative, judicial and purely executive processes of government, including discretionary acts and decisions within the framework of such processes, cannot and should not be characterized as tortious. Public policy and maintenance of the integrity of our system of government necessitate this immunity, however unwise, unpopular, mistaken or neglectful a particular decision or act might be. (emphasis supplied).
371 So.2d at 1019.
How to distinguish between such "planning level" activities and the day-to-day operational activities of government is not a simple task. It is not enough to point to discretionary authority on the part of public officials, because many routine administrative (operational) acts involve the exercise of some discretion. The Supreme Court has adopted the test of Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965), as a preliminary indication of how an act or omission would be characterized:
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become *878 necessary, depending upon the facts and circumstances involved.
371 So.2d at 1019.
Applying these principles to the facts here, it is clear that these questions may all be answered in the affirmative. Whether to allow, restrict or otherwise regulate vehicular traffic on the beach requires a decision which involves a basic governmental policy, program or objective; the questioned omission or decision is essential to the realization of that policy or objective; the decision requires the exercise of basic policy evaluation on the part of the governmental agency which has the lawful authority and discretion to make that decision.
While the City has the power to regulate vehicular traffic on the beach, and as indicated by the dissent, even the power in some form or other to restrict or eliminate it,[3] when, where, why, how and whether to implement such power is a serious matter of governmental concern. In a tourist oriented community, a beach modestly described as "The World's Most Famous Beach," on the sands of which famous race drivers have driven famous racing automobiles and over which many thousands of motor cars are driven annually, we cannot impose tort liability on a municipality simply because we conclude that accidents on the beach between motorists and pedestrians can be avoided by limiting or restricting vehicular traffic. To restrict or not restrict, to regulate or not to regulate traffic on the beach where the tourist industry is so important to the economy of the community, and where motoring on the beach is a well recognized tourist attraction, is a basic governmental policy decision to be decided by the elected officials of the community, and not by a court or jury.
So we, too, hold that although section 768.28 evinces the intent of our legislature to waive sovereign immunity on a broad basis, nevertheless, certain "discretionary" governmental functions remain immune from tort liability. This is so because certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance.
371 So.2d at 1022.
Collum v. City of St. Petersburg, 400 So.2d 507 (Fla.2d DCA 1981), relied on in the dissenting opinion, is not applicable to the facts here. There, the City had completed its "discretionary" or decision making function and had acted. In implementing the plan at the operational level, it did so negligently, so it was alleged, and as a result of that negligence in maintenance and design of a storm sewer system, plaintiff's decedents were swept into the storm sewer and drowned. The case did not involve the determination of whether the City should or should not have designed and built the system, or whether there would be tort liability for not building it. Even there, however, the court recognized that there can be no tort liability in the absence of a duty to act:
As already noted, the so-called exception for "discretionary" acts is a misnomer. "Discretion to act" completely precludes any possibility that a duty to act will be breached. Historically, no one  whether an individual or a government  has ever been liable where true discretion has been exercised in deciding whether to act or which of two or more reasonable courses of action to follow.
400 So.2d at 508.
The fact that the City has the power to curtail or regulate traffic on the beach cannot and should not make it liable in tort when the determination of when and how to exercise that power is a matter of governmental discretion, at least not under the facts presented here.[4] It is not a tort for government to govern. Dalehite v. United States, 346 U.S. 15, 57, 73 S.Ct. 956, 979, 97 *879 L.Ed. 1427 (1953) (Jackson, J., dissenting), and the basic issue of whether traffic should or should not be restricted or regulated on this beach is one for governmental, not judicial, determination.
The final judgment for appellee is
AFFIRMED.
COWART, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I respectfully dissent in this case. Ralph appealed an order of the trial court dismissing with prejudice her third amended complaint against the City of Daytona Beach for failure to state a cause of action. She sought to recover damages for injuries suffered when she was struck by a car while sunbathing on Daytona Beach. Daytona contended the negligent acts complained of come within the planning level of decision making by the City, rendering it immune from tort liability. See Commercial Carrier Corporation v. Indian River County, 371 So.2d 1010 (Fla. 1979).
The complaint alleged that Daytona breached its duty to Ralph by failing to provide a safe place for sunbathing on the City controlled beach. It advertised and encouraged use of the beach by swimmers and sunbathers, but it allowed to mix with them, streams of vehicular traffic. The traffic was not supervised or regulated or confined to traffic lanes apart from the sunbathers; nor were the sunbathers warned they should or should not sunbathe in certain locations because of their proximity to the traffic. The complaint further alleged that the danger to the sunbathers because of the auto traffic was well known to the City.
The City argued that its decision to undertake traffic control on the beaches or not, and its decision to warn sunbathers or not, are "planning" level functions, and therefore sovereign immunity applies. The appellant argued these activities are within the City's "operational" level functions. The difficulty of determining what is "operational" as opposed to "planning" promises to be as deep a legal quagmire as the bog of "governmental" versus "non-governmental."[1]
Judge Ott wrote in Collom v. City of St. Petersburg, 400 So.2d 507, 508 (Fla.2d DCA 1981):
As we review the cases which come before us, it is all too obvious that many people still do not really understand that `sovereign immunity' simply no longer exists in this state. A government is liable for its negligent acts and omissions without exception ..., `Discretion to Act' completely precludes any possibility that a duty to act will be breached. Historically, no one  whether an individual or a government  has ever been liable where true discretion has been exercised in deciding whether to act or which of two or more responsible courses of action to follow. But immunity of a government for negligently performing an act no longer exists even though the initial decision to act may have been purely discretionary and not compelled in any way. .. . [O]nce a government decides to act, whether out of obligation or free choice, it must act responsibly and reasonably under the existing circumstances, and in accordance with acceptable standards of care and common sense.
In Collom the city had allegedly designed and built an unsafe storm sewer system that allowed the plaintiffs to be swept up into it and drowned. Cities as well as other state agencies are subject to the Commercial Carrier doctrine.[2]
In this case Daytona was allegedly negligent because it failed to control traffic on the beach. Daytona clearly has the power to regulate and control traffic on the beach.[3] It could have restricted it,[4] or even *880 banned it on a limited basis, depending upon the circumstances.[5]
The need or lack of need for regulation of traffic, where subject to reasonable debate, would probably be a "planning-level" decision. But if the need for regulation is readily apparent, as for example at an intersection between I-4 and I-95, then the City's failure to take reasonable regulatory measures would be "operational" level in my view. The question should not turn on "feasance" versus "nonfeasance." In Commercial Carrier, the Florida Supreme Court said that planning versus operational activity depended upon whether or not there are basic governmental policy decisions involved:
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective?
(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?
(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
(4) Does the governmental agency involved possess requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission or decision? (Emphasis added).
Commercial Carrier, 371 So.2d at 1019.
The complaint alleged the City allowed a dangerous condition to bathers to exist on its beaches, that it knew of the danger, and that it failed to regulate traffic when it should have done so. In my opinion, this is sufficient under Commercial Carrier. The type of traffic control possible, given the flux of the tides, and whether or not its absence contributed to Ralph's injury, would be issues which she would have to prove. Because I think the complaint states a cause of action[6] I would reverse the judgment.
NOTES
[1] A claim for damages against Fetsko is contained in a separate count of the complaint and is not involved in this appeal.
[2] There were other allegations of negligence, which are summarized by the following excerpt from the complaint:

"As a direct and proximate result of ... the City's failure to have a sufficient number of attendants to regulate traffic or direct traffic, the City's failure to properly direct motor vehicle traffic on the beach, the City's failure to properly control motor vehicle traffic in relation to sunbathers and pedestrian traffic, and the fact that the City knowingly improperly allowed motor vehicles to drive near the water where sunbathers were lying unprotected and not readily visible, ... and in the absence of proper warning to sunbathers ..." the collision occurred.
The quoted provision claims proximate causation between the alleged negligence of the City and the injury caused by the third party. In the light of our decision here, we do not discuss the issue of proximate cause between the alleged acts and omissions of the City and the injury caused by any intervening negligent operation of a motor vehicle by a third party.
[3] Town of Atlantic Beach v. Oosterhoudt, 127 Fla. 159, 172 So. 687 (1937).
[4] As an example of a decision holding a city not liable in tort because of an alleged failure to have police officers present during a rally which turned into a riot causing extensive property damage, see Wong v. City of Miami, 237 So.2d 132 (Fla. 1970), approved in Commercial Carrier.
[1] See Commercial Carrier Corporation v. Indian River County, 371 So.2d 1010 (Fla. 1979).
[2] Cauley v. City of Jacksonville, 403 So.2d 379 (Fla. 1981).
[3] Ch. 67-1274, § 7(b), Laws of Fla. states:

(b) Beach a public highway; power of city.  That the beach of the Atlantic Ocean between high and low water mark, within the limits or confines of the city of Daytona Beach, be and the same is hereby made and declared to be a public highway, and the said city is hereby given jurisdiction, supervision and control over the same; said city is also hereby given the power and authority to regulate and/or license any and all businesses, trades, occupations and/or concessions conducted upon said beach.
[4] § 316.008, Fla. Stat. (1979).
[5] Town of Atlantic Beach v. Oosterhoudt, 127 Fla. 159, 172 So. 687 (1937).
[6] Banta v. Rosier, 399 So.2d 444 (Fla. 5th DCA 1981).